**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

TELEBUYER, LLC,

               Plaintiff,

    v.

AMAZON.COM, INC., AMAZON WEB
SERVICES LLC, and VADATA, INC.,

               Defendants.

Civil Action No. 1:13-CV-884 (LMB/TCB)

**PLAINTIFF TELEBUYER, LLC'S OPPOSITION TO DEFENDANTS' MOTION
TO TRANSFER VENUE TO THE WESTERN DISTRICT OF WASHINGTON
<u>PURSUANT TO 28 U.S.C. § 1404(a)</u>**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................ 1

II.    BACKGROUND .............................................................................................. 3

III.   ARGUMENT ................................................................................................... 8

     A.    Plaintiff's Forum Choice is Entitled to Significant Weight Because It Is the Center of Infringing Activities ...................................................... 8

     B.    The Convenience Factors Favor Retaining Venue In Virginia ............................ 11

          1.    A Significant Number of Potential Third-Party Witnesses Are Located in this District.................................................. 12

          2.    A Significant Number of Potential Party Witnesses Are Located in this District.......................................................... 15

          3.    Significant Evidence Is Located In This District .................................... 17

          4.    Defendants' Convenience Arguments Do Not Weigh Strongly In Favor of Transfer ................................................... 18

     C.    The Interests of Justice Weigh Against Transfer ............................................... 20

IV.   CONCLUSION ............................................................................................. 21

# TABLE OF AUTHORITIES

**Page**

## Cases

*Acterna, LLC v. Adtech, Inc.*,
    129 F. Supp. 2d 936 (E.D. Va. 2001) ................................................... 10

*Atl. Recording Corp. v. Project Playlist, Inc.*,
    603 F. Supp. 2d 690 (S.D.N.Y. 2009) .................................................. 11

*Bascom Research, LLC. v. Facebook, Inc.*,
    No. 1:12-cv-1111, 2012 U.S. Dist. LEXIS 186712 (E.D. Va. Dec. 11, 2012) ........................ 15

*Collins v. Straight, Inc.*,
    748 F.2d 916 (4th Cir. 1984) .................................................... 2, 8

*Guardian Pharm. of Eastern NC, LLC v. Weber City Healthcare*,
    No. 2:12-cv-00037, 2013 U.S. Dist. LEXIS 9937 (W.D. Va. Jan. 24, 2013).................... 11, 20

*Heinz Kettler GMBH & Co., v. Razor USA, LLC*,
    750 F. Supp. 2d 660 (E.D. Va. 2010) .............................................. 8, 11, 21

*Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp.*,
    227 F. Supp. 2d 581 (E.D. Va. 2002) .................................................. 20

*Jaffe v. LSI Corp.*,
    874 F. Supp. 2d 499 (E.D. Va. 2012) .................................................. 20

*Lycos, Inc. v. Tivo, Inc.*,
    499 F. Supp. 2d 685 (E.D. Va. 2007) .................................................. 11

*Mullins v. Equifax Info. Services, LLC*,
    No. 3:05-cv-888, 2006 WL 1214024  (E.D. Va. Apr. 28, 2006)........................ 11, 13

*NanoEntek, Inc. v. Bio-Rad Laboratories, Inc.*,
    No. 2:11-cv-427, 2011 WL 6023189  (E.D. Va. Dec. 2, 2011)................................ 8

*Pinpoint IT Services, LLC v. Atlas IT Exp. Corp.*,
    812 F. Supp. 2d 710 (E.D. Va. 2011) .................................................. 20

*Pragmatus AV, LLC v. Facebook, Inc.*,
    769 F. Supp. 2d 991 (E.D. Va. 2011) .................................................. 18

*Samsung Elecs. Co. v. Rambus Inc.*,
    386 F. Supp. 2d 708 (E.D. Va. 2005) .............................................. 18, 19

*Uretek USA, Inc. v. Applied Polymerics, Inc.*,
    No. 3:11-cv-542, 2011 U.S. Dist. LEXIS 139349 (E.D. Va. Dec. 5, 2011)...................... 11, 13

I.       **INTRODUCTION**

Plaintiff Telebuyer, LLC ("Telebuyer") filed suit in this District because over 80% of the accused instrumentalities are located here.  The patents-in-suit[1] cover networked computer systems for performing electronic commerce transactions, and processes of conducting electronic transactions using such computer systems.  The overwhelming majority of all infringing computer systems operated by Defendants Amazon.com ("Amazon"), Amazon Web Services ("AWS"), and VADATA (collectively, "Defendants") are located, developed, tested, and used in Northern Virginia.  Indeed, by one recent estimate, 88% of those systems are operated by Defendants here.  Moreover, certain infringing features appear to be performed *exclusively* by Defendants' systems located within this District.  At any given moment, when thousands of Amazon customers direct their web browsers to Amazon.com, they are most likely to be receiving data from and transmitting data to Defendants' computers in this District.  Amazon's assertion that "Defendants have no relevant ties to this District" [Dkt. No. 32 at 1] is simply untrue.

Defendants incorrectly focus the transfer analysis on the alleged lack of tie between Telebuyer and this venue, attempting to divert attention from the scope of their own infringing conduct within this District.  For example, Defendants argue that the location of their computers and data centers is irrelevant because this case is about Amazon's website.  [*See* Dkt. No. 32 at 2-3.]  But the patents-in-suit cover more than the mere visual interface of Amazon's website; they cover the electronic commerce platform underlying that website.  That platform is formed of programs and data files stored on Defendants' computers primarily situated in Northern

---

[1]The patents-in-suit are: U.S. Patent Nos. 6,323,894 (the "'894 Patent"), 7,835,508 (the "'508 Patent"), 7,835,509 (the "'509 Patent"), 7,839,984 (the "'984 Patent"), 8,059,796 (the "'796 Patent"), 8,098,272 (the "'272 Patent"), and 8,315,364 (the "'364 Patent").  [Dkt. Nos. 1-2 to 1-8.]

Virginia.  In other words, the center of the accused activity is in this District because over 80% of Amazon's programs, files, and computers are located in this District.

Defendants also take the untenable position that no potential witness or relevant evidence exists in Virginia.  [*See* Dkt. No. 32 at 1, 10.]  Not so.  As will be shown, given their significant presence in this District, Defendants have many local employees—both current and former— who have information relevant to the issues in this case.  Likewise, with Northern Virginia's large concentration of internet-related businesses, many third-party witnesses are located within or near this District.  Finally, with the bulk of Defendants' infringing servers physically located in Northern Virginia, there is significant relevant evidence in this District.

Under Fourth Circuit law, "***unless the balance is strongly in favor of the defendant***, the plaintiff's choice of forum should rarely be disturbed."  *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (emphasis added).  Defendants fall far short of meeting this high burden. Defendants rely on rhetoric and accuse Telebuyer of forum shopping, but the facts demonstrate that it is Defendants who are attempting to move the case across the country—away from the milieu of infringing technology—in order to gain a tactical advantage.  Defendants' motion to transfer should be denied for at least three reasons:

- First, Telebuyer's choice of forum should not be disturbed given that the "center of the accused activity" is the Eastern District of Virginia.

- Second, the convenience factors weigh in favor of retaining venue in this District because many potential witnesses and substantial evidence are located in or near here.

- Third, given the Commonwealth of Virginia's investments in Defendants, there is substantial public interest in adjudicating this case locally and expediently.

II.   **BACKGROUND**

The inventor of the patents-in-suit and founder of Telebuyer—Mr. Ronald A. Katz—is a technology visionary who developed groundbreaking systems and methods that are central to today's electronic commerce industry.  On January 27, 1994—during the infancy of the Internet age, and before Defendants even existed—Mr. Katz filed a patent application disclosing an invention that would change how millions of consumers purchase products.  Mr. Katz invented a system that conducts commerce over an electronic network, providing now-ubiquitous features such as personalized recommendations, video product presentations, user-controllable product views, vendor ratings, automated follow-ups, live operator support, multiple modes of access, prioritization, social-network sharing, personalized accounts, and selectivity in the retrieval of products and services.  Mr. Katz's patent application matured into the patents-in-suit.

Amazon became the world's largest online retailer by, in large part, using Mr. Katz's inventions.  Founded as an online bookstore in the mid-1990s, Amazon has grown into a multibillion dollar behemoth that sells computers, consumer electronics, household goods, food, jewelry, network "cloud" storage, MP3 music files, and practically every product and service imaginable through its Amazon.com website.  *See* Ex. 1.[2]  Amazon's rapid growth was fueled by the technology invented by Mr. Katz.  For example, the patents-in-suit cover technology that enables a vendor to provide personalized product recommendations to potential customers.  [*See, e.g.,* Dkt. No. 1-2, '894 Patent at Claim 103.]  Amazon uses and relies on this patented technology to grow its business—an Amazon executive noted that "[p]ersonalized recommendations are at the heart of why online shopping offers so much promise."  Ex. 2 at 2. Amazon uses numerous other technologies patented by Mr. Katz to differentiate itself from its

---

[2] All exhibits cited herein are attached to the Declaration of Xin-Yi Zhou In Support of Plaintiff Telebuyer, LLC's Opposition to Motion to Transfer ("Zhou Decl.") filed concurrently herewith.

competitors and provide its customers the capability to quickly find and purchase products among Amazon.com's massive catalogue of offerings.

While Amazon started in Seattle, it has since moved the core of its technology infrastructure to Virginia.  Amazon's website and associated data are stored on networked computers called "servers," which are installed and operated in building campuses called "data centers."  In 2006, Amazon began transferring its data to defendants AWS and VADATA— Amazon's wholly owned subsidiaries formed to design, control, and operate servers and data centers.  *See* Ex. 3; Ex. 5 at 1.  By November 2010, Amazon had migrated all of the operations of its server fleet to AWS.  *See* Ex. 4; Ex. 5 at 7.

AWS provides computer, storage and database services—primarily from Northern Virginia—to Amazon and third-party companies for running programs and storing data supporting various websites, including the Amazon.com website.  *See* Exs. 6-7.  Defendants admit that Amazon.com runs from AWS's data centers.  *See* Dkt. No. 32 at 5.  Since 2010, "every webpage to the Amazon.com website has been rendered on a fleet of [AWS's Elastic Cloud Compute] EC2 machines" (Ex. 5 at 7); AWS's website shows that none of those EC2 machines are in Washington state.  *See* Ex. 7.

AWS operates data centers across the country, but by far its largest such site is its "US East" location in Northern Virginia, within this District.  *See* Exs. 7-10.  Indeed, Amazon's website recently identified AWS's location as "Herndon, VA" and an agreement between Defendants and Fairfax County shows a Herndon address for AWS.  *See* Exs. 11-12.[3]  Numerous independent reports estimate that between 85% and 88% of AWS's U.S. servers are in Northern Virginia.  *See* Ex. 8 at 1 (showing 88% of U.S. servers in Virginia); Ex. 9 at 3 (85%); Ex. 10 at 1

---

[3] Amazon has since removed AWS's Herndon location from its website, leaving only identification of AWS's foreign locations in Singapore and Stockholm.  *See* Ex. 13.

(85%).  By comparison, none of AWS's other data centers holds more than 10% of its U.S.

server fleet.  *See id.*  The map below illustrates the geographic distribution of Defendants'

servers across the globe—the largest dot, by far, represents servers in Northern Virginia:



**Figure 1.  Geographic Distribution of AWS's Elastic Compute Cloud (EC2) Servers[4]**

    In addition, Amazon is in the midst of expanding its Northern Virginia operations.  *See*

Exs. 14-15.  Citing Defendants' "significant Virginia presence," Governor Bob McDonnell

recently approved a $500,000 grant to assist Defendants with their operations in Fairfax County.

*Id.*  In exchange for the grant, Defendants agreed to hire additional local employees from this

District.  *See* Ex. 12 at 1-2.  Indeed, Defendants have advertised the availability of many

software developer positions in Herndon to support the development of Defendants' "Commerce

Platform."  *See, e.g.*, Exs. 16-18.

    Not only are their infringing systems situated in Northern Virginia, Defendants'

infringing activities take place predominately within this District.  When a U.S. consumer visits

the Amazon.com website, the overwhelming likelihood—since over 80% of Defendants' servers

are in Northern Virginia—is that the interaction is controlled by, and the consumer is receiving

---

[4] Ex. 9 at 3.

product data stored on, servers in this District.[5]  *See* Exs. 7-10.  When a consumer places an order, that order is likely received and processed by computers in this District.[6]  *See id*.  When a consumer receives an email providing recommendations for products and services, that email is likely generated and sent by computers in this District.[7]  *See id*.  When a consumer receives a notification message on his or her smartphone, iPad, or Kindle, that message is likely transmitted by computers in this District.[8]  *See id*.  These infringing transactions are all predominately performed by Defendants' servers located in this District.[9]

When Defendants moved their infringing systems from Seattle to Northern Virginia, they also transferred key employees to this District.  Many potential witnesses, including Defendants' current and former employees, live in or near Northern Virginia.  One such example is AWS's Chief Information Security Officer, Stephen Schmidt.  Mr. Schmidt was previously General Manager of Technical Services for Amazon.com, and now runs Amazon's website from AWS's facilities in Herndon.  *See* Ex. 25.  Mr. Schmdit is certainly knowledgeable about Defendants' electronic commerce platform, and has publicly described AWS as having the "same operations infrastructure and experience as Amazon.com retail sites."  Ex. 26 at 20.

---

[5]AWS provides computer storage services such as the Amazon Relational Database Service (Amazon RDS) and the Amazon Simple Storage Service (Amazon S3).  *See* Exs. 7 and 19-20.

[6]AWS provides computing services such as the Amazon Elastic Compute Cloud (Amazon EC2).  *See* Exs. 7 and 21.

[7]AWS provides email transmission services such as the Amazon Simple Email Service (Amazon SES).  *See* Ex. 22.  The Amazon SES service is provided only from AWS's Northern Virginia facility.  *See* Ex. 7; Ex. 23 at 2.

[8]AWS provides a message notification service called Amazon Simple Notification Service (SNS).  *See* Exs. 7 and 24.

[9] *See, e.g.,* Dkt. No. 1-4, '509 Patent at Claim 17 (transmitting "subsequent electronic communication, after the interface between the buyer and the one or more multiple coordinated control systems is terminated"); Dkt. No. 1-8, '364 Patent at Claim 89 (transmitting a message based "upon request data of the at least one buyer previously stored in a memory").

Other potential witnesses include Herndon-based Director of Security Products and Services Andrew Doane, Senior Software Development Manager Kevin Miller, Senior Principal Security Engineer Eric Brandwine, Senior Technical Program Manager Mihir Patel, and Network Deployment Engineer Jawash Mohamed.  *See, e.g.,* Exs. 27-31.  In addition, many former Amazon employees, including the former head of Amazon's Ordering Group, Vijay Ravindran, now live in or near this District.  *See, e.g.,* Exs. 32-33.  Substantial evidence, including the infringing servers and the software programs and data that form Amazon's electronic commerce platform, is located in this District.  *See, e.g.*, Ex. 7.

Since the 1990s, the Northern Virginia region has become home to a high concentration of internet and electronic commerce companies.  Thus, it is not surprising that a significant number of potential third-party witnesses are also located in or near this District.  For example, a key aspect of Mr. Katz's invention relates to a system that facilitates commerce between multiple buyers and multiple vendors.  [*See, e.g.*, Dkt. No. 1-4, '509 Patent at Claim 74.]  Hundreds of third-party vendors sell products through the Amazon.com website; many of the largest third-party vendors are based in or near Northern Virginia.  *See, e.g.,* Exs. 34-42.  As another example, forty-nine inventors of prior art references cited on the face of the patents-in-suit are from the Virginia, Maryland, and Washington D.C. Metro area.  *See* Zhou Decl. at ¶ 52; Ex. 51. Testimony from these third-party witnesses and companies will likely be necessary for a range of issues relating to infringement, validity, and damages.

Having benefited greatly from moving its technology infrastructure to Virginia, Defendants now attempt to downplay their local presence by arguing that the location of the data centers is unimportant.  But Amazon's move to Virginia was carefully planned—by moving its servers here, Amazon was able to reduce the cost of operating the Amazon.com website by

twenty-five percent.  *See* Ex. 43 at 2.  In addition, Defendants received substantial support from the taxpayers of the Commonwealth in grants and other subsidies.  *See, e.g.*, Exs. 12 and 15. These non-trivial ties to Virginia present a strong local interest in adjudicating this case here.

## III.   ARGUMENT

Defendants bear the burden of establishing that the balance of convenience weighs ***strongly*** in favor of the requested transfer.  *See Heinz Kettler GMBH & Co. v. Razor USA, LLC,* 750 F. Supp. 2d 660, 668 (E.D. Va. 2010); *see also Collins*, 748 F.2d at 921 ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). Absent such a showing, Defendants' motion must be denied.

In assessing whether Defendants have met their substantial burden, this Court considers (1) Plaintiff's choice of venue; (2) the convenience to the parties and access to witnesses, documents, and other evidence; and (3) the interests of justice.  *Heinz*, 750 F. Supp. 2d at 667. Each of these factors weighs in favor of retaining venue in this District.

### A.   Plaintiff's Forum Choice is Entitled to Significant Weight Because It Is the Center of Infringing Activities

Telebuyer's choice of forum is entitled to "substantial weight" because the chosen forum "bears a substantial relation to the cause of action."  *Heinz,* 750 F. Supp. 2d at 667; *see also, NanoEntek, Inc. v. Bio-Rad Laboratories, Inc.*, No. 2:11-cv-427, 2011 WL 6023189 at *4 (E.D. Va. Dec. 2, 2011) ("the preferred forum for patent cases is the center of the accused activity").

The patents-in-suit cover the electronic commerce platform underlying the Amazon.com website.  [Dkt. No. 1, Complaint at ¶¶ 22-23.]  The programs, data files, and computers forming that infringing platform exist mostly within this District.  *See* Exs. 7-10.  For example, the asserted '984 Patent recites a "commercial transaction communication system including one or more multiple coordinated control units …."  [Dkt. No. 1-5 at Claim 1.]  Over 80% of

Defendants' servers—which are commercial transaction communication systems and contain the claimed coordinated control units—are in AWS's Northern Virginia data centers.  *See* Exs. 7-10.  The '509 Patent recites "a process, utilizing one or more multiple coordinated central control stations …, for controlling buyer and vendor communication."  [Dkt. No. 1-4 at Claim 1.]  Defendants perform the claimed process of controlling buyer and vendor communication using servers in this District.  *See* Exs. 7-10.  The center of infringing activities is in Virginia—not Washington state—because the bulk of Defendants' electronic commerce platform is located here.

 For example, Amazon relies on servers in this District to perform a key feature covered by the patents-in-suit—the transmission of product recommendation messages based on customers' individual browsing and purchasing history.  [*See e.g.,* Dkt. No. 1-4, '509 Patent at Claim 17 (transmitting "subsequent electronic communication, after the interface between the buyer and the one or more multiple coordinated control systems is terminated"); Dkt. No. 1-8, '364 Patent at Claim 89 (transmitting message based "upon request data of the at least one buyer previously stored in a memory").]  This recommendation feature requires Amazon to retain detailed records of its customers' purchasing and browsing histories.  *See, e.g.*, Ex. 5 at 13.  Vast amounts of data detailing consumers' behavior patterns are stored on AWS's "Relational Database" and "S3" servers, most of which are located in Northern Virginia.  *See id*. (disclosing that "S3" archives 670 million Amazon orders); Exs. 7-10.  Amazon's product recommendation messages are believed to be transmitted by AWS's Simple Email Service (SES) servers.  *See* Zhou Decl. at ¶¶ 45-46; Exs. 44-45.  The infringing SES servers exist ***only*** in AWS's Northern Virginia location.  *See* Ex. 7; Ex. 23 at 2.  Thus, Defendants' systems that perform a key part of the infringing recommendation functionality exist ***only*** in this District.  Retaining venue in this

District would enable the trier of fact to be as close as possible to the "milieu" of the infringing technology and the "hub of activity" centered around it.  *See Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001).  As the center of the infringing activities, the Eastern District of Virginia is the most appropriate forum for this case.

Defendants' attempts to distance themselves from their Virginia operations fail for several reasons.  First, Amazon argues that because the accused features are portions of Amazon's "website," its "servers and data centers" are irrelevant because they are "simply machines that hold data."  [Dkt. No. 32 at 3.]  This argument is nonsensical because Defendants' "machines that hold data" form the accused electronic commerce platform that perform the accused features.  When a customer visits the Amazon.com website, webpages do not appear by magic; data is transferred from Defendants' Northern Virginia servers, by programs running on those servers, to the customer's device.  The accused functionalities cannot be divorced from the Northern Virginia servers that actually perform the infringing operations.

Second, Defendants' argument that their Virginia servers are "interchangeable" with other servers [Dkt. No. 32 at 3] is contradicted by their own publications, and in all events irrelevant.  AWS's website indicates that certain services—including the Simple Email Service (SES) used for sending personalized recommendation messages—are available only in Defendants' Northern Virginia site.  *See* Exs. 7 and 23.  But even accepting Defendants' "interchangeable" claim as true, it is irrelevant to the transfer analysis because most of the infringing systems are indisputably located in this District.[10]  The existence of other servers that also infringe, or could potentially infringe, does not detract from the fact that over 80% of the infringing instrumentalities are actually located in this District.

_____

[10] In contrast, AWS's website shows that none of its EC2 availability zones (*i.e.* primary data center locations) are in Washington state.  *See* Ex. 7.

Defendants fail to cite any precedent in which a Court transferred a case away from the center of the accused activity.  In *Uretek USA, Inc. v. Applied Polymerics, Inc.*, this Court denied defendants' motion to transfer despite the fact that plaintiff was from out of state, in part because the allegedly infringing activity occurred in this District.  No. 3:11-cv-542, 2011 U.S. Dist. LEXIS 139349 at *6 (E.D. Va. Dec. 5, 2011).  In *Guardian Pharm. of Eastern NC, LLC v. Weber City Healthcare*, the Court gave an out-of-state plaintiff's choice of forum "great weight" and denied a transfer motion because the accused activity occurred in Virginia.  No. 2:12-cv-00037, 2013 U.S. Dist. LEXIS 9937, *33 (W.D. Va. Jan. 24, 2013).  *See also Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 697 (S.D.N.Y. 2009) (finding that New York was a center of accused activity primarily because the allegedly infringing websites were hosted on servers there).  The facts of this case compel a similar result.  Telebuyer chose to file suit in this District because Amazon's infringing systems and activities are concentrated here.  Because this District "bears a substantial relation to the cause of action," Telebuyer's choice of forum should not be disturbed absent compelling evidence that tips the balance of convenience "***strongly*** in favor of transfer," which has not been shown.  *See Heinz,* 750 F. Supp. 2d at 667, 670 (emphasis added).

**B.   The Convenience Factors Favor Retaining Venue In Virginia**

When analyzing the convenience of the forum to parties and witnesses, this Court considers the "ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process."  *Lycos, Inc. v. Tivo, Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007) (citations omitted).  In particular, "[t]he convenience of non-party witnesses should be afforded greater weight in deciding a motion to transfer venue."  *Mullins v. Equifax Info. Services, LLC*, No. 3:05-cv-888, 2006 WL 1214024 at *7 (E.D. Va. Apr. 28, 2006).  With many potential party and non-party witnesses and key evidence located in Virginia, the

convenience factors weigh in favor of retaining this case in this District.

**1.  A Significant Number of Potential Third-Party Witnesses Are Located in this District**

Defendants' position that no potential third party witness resides in this District is demonstrably false.  Telebuyer is aware of a significant number of third-party witnesses located in or near this District who could not be compelled to come to trial if this case were transferred across the country, as Defendants seek by their motion.

First, given the high concentration of internet-related businesses in and near Northern Virginia, many third-party retailers who sell products through Defendants' website are located in or near this District.[11]  These third-party vendors have discoverable information critical to this case.  One such company is FoodserviceDirect Inc., located in this District in Hampton, Virginia. *See* Ex. 34.  FoodserviceDirect sells over 23,000 "Industrial and Scientific" products and over 21,000 "Grocery and Gourmet Food" products through Amazon.com.  *See* Exs. 35-36. FoodserviceDirect will have information pertaining to how Amazon prioritizes its display of third-party vendors' goods on Amazon.com.  This information is highly relevant to claims of the patents-in-suit covering a system that provides data based on "priority designations" assigned to one or more vendors.  [*See, e.g.,* Dkt. No. 1-4, '509 Patent at Claim 74.]  In addition, FoodserviceDirect will have discoverable information pertaining to the amounts it paid to Amazon for access to the accused technology, and the desirability of that technology and its impact on FoodserviceDirect's sales, both of which are highly relevant to the damages analysis in this case.

In addition to FoodserviceDirect, Telebuyer is aware of at least the following other third-

---

[11] Hundreds (or perhaps thousands) of third-party vendors contract with Amazon to sell products through the Amazon.com website; consumers who buy products on Amazon.com may not even realize that the products are actually being sold by a third-party seller.  *See, e.g.,* Exs. 35-36, 38.

party vendors—all listed among "Top Sellers" on Amazon.com—located within or very close to this District:

- 7 Gifts, a "Top Seller" of arts and crafts products on Amazon.com, is located within the Eastern District of Virginia in Richmond.  *See* Exs. 37-38.  7 Gifts sells over 23,000 products on Amazon.com.  *Id.*

- Arts Crafts USA, another "Top Seller" of arts and crafts products, is located 20 miles from this Court in Rockville, Maryland.[12]  *See* Exs. 38-40.  Arts Crafts USA sells over 10,000 products on Amazon.com.  *Id.*

- Materro, LLC, a "Top Seller" of industrial and scientific products, is located 17 miles from this Court in Potomac, Maryland.  *See* Exs. 35 and 41-42.  Materro sells over 86,000 products on Amazon.com.  *Id.*

Like FoodserviceDirect, each of 7 Gifts, Arts Crafts USA, and Materro will also have discoverable information pertaining to Defendants' use of the patented technology and the benefits Defendants and their network of third-party vendors have derived from being able to offer the prioritization functionality covered by Telebuyer's patents-in-suit.  Because Northern Virginia is a magnet for internet-related businesses, *see* Exs. 46-47, Telebuyer expects that there are many other third-party vendors located in or near this District.[13]  The locations of these large third-party vendors weigh strongly against the requested transfer.  *See Mullins*, 2006 WL

---

[12] Although not within the Eastern District of Virginia, Arts Crafts USA is well within the subpoena power of this Court.  *See Uretek,* 2011 U.S. Dist. LEXIS 139349 at *7-8 (finding non-party witnesses within the subpoena power of the Court, and outside the subpoena power of the transferee court, an important factor in declining motion to transfer).

[13] The identities and geographic locations of the complete list of third-party vendors are known only to Amazon at this time.  Should Amazon dispute the presence of large third-party vendors in or near this District, Telebuyer respectfully requests leave to conduct limited discovery of Amazon into the identity and location of the third-party vendors offering goods on Amazon.com to supplement the showing made here.

1214024 at *7.

Second, many former employees of Defendants live in or around Virginia.  For example, Vijay Ravindran, now a *Washington Post* employee in D.C., was formerly head of Amazon's Ordering Group responsible for the "Your Account" feature on Amazon.com.  *See* Ex. 32.  Thus, Mr. Ravindran is likely to have relevant information regarding Amazon's development and past use of the accused technology, including the personalized account feature covered by the patents-in-suit.  [*See, e.g.,* Dkt. No. 1-4, '509 Patent at Claim 57 (reciting "receiving identification data provided by buyers").]  Peter Beckman, designer of the Amazon Machine Image (AMI) Copy function used to replicate data across different geographic regions, also resides in the D.C. Metro area.  *See* Ex. 33 at 1.  Mr. Beckman is likely to have relevant information pertaining to the transfer of data among infringing servers, which is relevant to claims requiring coordination of multiple computers.  [*See, e.g.,* Dkt. No. 1-4, '509 Patent at Claim 1 (reciting "multiple coordinated central control stations linked for communication").]  Mr. Beckman also "owned business metrics" and "drove weekly metrics and data-driven decision-making" (Ex. 33 at 2), and thus should have knowledge of the types of business metrics used by Amazon to drive business decisions, as well as how such metrics are collected and kept in the ordinary course of business.  These business metrics likely contain information pertaining to the usage and benefits of the accused systems, which is highly relevant to Telebuyer's damages claim.  *See id.*

Finally, many third-party witnesses who have knowledge pertaining to the development of early electronic commerce systems, which is relevant to the validity of the patents-in-suit, are believed to be located in or near this District.  Among the prior art cited on the face of the patents-in-suit, twenty-two inventors were based in Virginia and another twenty-seven were from Maryland and Washington D.C.  *See* Zhou Decl. at ¶ 52; Ex. 51.  Indeed, as the place "where the

Internet was invented and commercialized," it is not surprising that the Northern Virginia region has significantly more cited inventors than Washington state, which has only six. *See id.*; Ex. 46. The locations of these forty-nine potential non-party witnesses in or near this District weigh strongly against a transfer. *See Bascom Research, LLC. v. Facebook, Inc.,* No. 1:12-cv-1111, 2012 U.S. Dist. LEXIS 186712, *5 (E.D. Va. Dec. 11, 2012) (finding locations of "inventors or authors of prior art references cited on the face of the patents-at-issue" relevant to the convenience inquiry).

**2.    A Significant Number of Potential Party Witnesses Are Located in this District**

Defendants' position that no potential party witness resides in Virginia is similarly untenable.  [*See* Dkt. No. 32 at 13.]  Telebuyer is aware of many potential witnesses in this District.  For example, Stephen Schmidt—AWS's Chief Information Security Officer and Amazon's former General Manager of Technical Services—is based in this District.  *See* Ex. 25. From Herndon, Mr. Schmidt leads the design, management, and development efforts for Defendants' server fleet.  *See id.*  Mr. Schmidt was responsible for the transition of Amazon's servers to AWS, and has publicly stated that AWS provides the "[s]ame operations infrastructure and experience as Amazon.com retail sites."  *See* Ex. 26 at 20.  Thus, Mr. Schmidt certainly has relevant knowledge of the structure and operation of Defendants' server infrastructure used to run Amazon's electronic commerce platform, and therefore Defendants' use of the patented technology.  For example, the asserted '984 Patent recites a "commercial transaction communication system … associated with … a site for storing data for the at least one vendor." [Dkt. No. 1-5 at Claim 1.]  In his role with AWS, Mr. Schmidt should have relevant knowledge as to how AWS's computation servers are associated with its storage servers.

Herndon-based AWS employees Eric Brandwine and Andrew Doane are co-inventors of

Amazon's U.S. Patent No. 8,340,275, entitled "Selective Contact Between Customers and Customer Service Agents." Ex. 48. Accordingly, Mr. Brandwine and Mr. Doane should have relevant information about the portion of Amazon's website that connects buyers to Amazon's customer service agents. *See id.* at Abstract. This customer-agent contact feature falls squarely within the scope of claims in the patents-in-suit that cover the interfacing of users to live operators. [*See, e.g.*, Dkt. No. 1-8, '364 Patent at Claim 1 (reciting "interfacing one or more buyers with one or more live operator stations"); Dkt. No. 1-5, '984 Patent at Claim 157 (reciting "transferring, the interested party from the select data site to one of the plurality of the live operator stations").]

AWS Senior Software Development Manager Kevin Miller is also located in Virginia. *See* Ex. 28. Mr. Miller and Mr. Brandwine are co-inventors of Amazon's U.S. Patent No. 8,296,434, entitled "Providing Dynamically Scaling Computer Load Balancing." Ex. 49. Accordingly, Mr. Miller and Mr. Brandwine should have knowledge of how Defendants perform "load balancing" operations—*i.e.* the coordination of multiple servers—that are relevant to claims of the patents-in-suit covering the use of multiple coordinated computers for managing transactions. [*See, e.g.,* Dkt. No. 1-4, '509 Patent at Claim 1 (reciting "multiple coordinated central control stations linked for communication with buyers or vendors").] Mr. Miller's team "own[s] the roadmap for Data Transfer features, pricing, and execution," and therefore likely has relevant information on how multiple coordinated computers exchange and transfer data. Ex. 28.

Mihir Patel, another AWS employee who was moved from Seattle to Virginia, is the Senior Technical Program Manager of AWS. Ex. 30. Mr. Patel is responsible for "establish[ing] and maintain[ing] roadmaps with various organizations across Amazon," and therefore likely has relevant knowledge of historical changes to Defendants' infringing systems. *See id.* Before his

transfer to AWS, Mr. Patel worked for Amazon and was "personally responsible for the program management of the OLP (Offer Listing Page) [and] Seller Promotions Manager." *Id.* Amazon's Offer Listing Pages display prioritized listings for products offered by multiple vendors (*see* Ex. 52)—a feature covered by several patents-in-suit. [*See, e.g.*, Dkt. No. 1-4, '509 Patent at Claim 74 (providing data based on "priority designations" assigned to one or more vendors); Dkt. No. 1-8, '364 Patent at Claim 58 (reciting "the one or more vendors are accorded a priority status").] Mr. Patel's experience with Amazon's Seller Promotions Manager is also likely relevant to the infringing time-limited promotion features such as the "Gold Box" and "Lightning Deals." [*See, e.g.*, Dkt. No. 1-6, '796 Patent at Claim 70 ("providing special offerings of certain of the merchandise … to the prospective buyers for a limited period of time").]

AWS employee Jawash Mohamed is a Network Deployment Engineer responsible for "deploy[ing] networks … to meet the network demand of both Amazon Retail and Amazon Web Services." Ex. 31. Thus, Mr. Mohamed should have relevant information regarding the operation of telecommunication networks that support the Amazon.com retail website. [*See, e.g.,* Dkt. No. 1-4, '509 Patent at Claim 17 (reciting "a method for directing and exchanging communications … through a communication network").] The locations of these potential party witnesses weigh against the requested transfer.

### 3. Significant Evidence Is Located In This District

Physical evidence Telebuyer may need to inspect—including Defendants' infringing servers—exists largely in this District. *See* Exs. 7-10. AWS's various data center sites have different capabilities, and the Northern Virginia location holds the most complete set of servers. *See* Ex. 7. While Telebuyer cannot determine at this early stage—without any discovery—the identities of the exact servers relevant to the patents-in-suit, it is nearly certain that most of them are located in this District. Inspection of the accused servers may be required, for example, to

determine their configurations for Telebuyer's infringement analysis.  *See, e.g.,* '509 Patent (reciting "multiple coordinated central control stations").

Defendants rely on *Pragmatus AV, LLC v. Facebook, Inc.,*769 F. Supp. 2d 991, 996 (E.D. Va. 2011), for the proposition that the physical location of Defendants' servers does not favor retaining venue in this District.  [Dkt. No. 32 at 11.]  *Pragmatus* is distinguishable on numerous grounds.  First, the *Pragmatus* Court noted that Facebook had no employees and offices in this District (769 F. Supp. 2d  at 994); in contrast, Defendants have many employees with relevant information in this District, and operate numerous offices and data centers here.  Second, the plaintiff in *Pragmatus* conceded that the Virginia servers did not contain relevant evidence (*id.* at 996); here, in contrast, Defendants' servers in Northern Virginia are the infringing instrumentalities and therefore contain substantial evidence relevant to this case.

### 4. Defendants' Convenience Arguments Do Not Weigh Strongly In Favor of Transfer

Amazon's "convenience" arguments fail to tip the scale strongly in favor of a transfer. First, for a company with nearly 100,000 employees (Ex. 50), Defendants identify only seven former employees who may have information relevant to Amazon's infringing "Gold Box" and "Lightning Deals" features.  [Dkt. No. 32 at 6.]  In *Samsung Elecs. Co. v. Rambus Inc.,* this Court rejected a nearly identical argument because the moving party failed to establish that its "former employees" would have "refused to testify in this district if Rambus assumes the cost of their expense in so doing."  386 F. Supp. 2d 708, 718-19 (E.D. Va. 2005).  Likewise, Amazon fails to establish that its former employees would be unwilling to travel to testify in this District.[14]  Nor do Defendants suggest that their current employees lack sufficient knowledge of

---

[14] The burden to show inconvenience of witnesses falls on Defendants, as this Court specifically requires that "the moving party must demonstrate 'whether that [potential non-party] witness is willing to travel to a foreign jurisdiction.'"  *Samsung*, 386 F. Supp. 2d at 719.

the accused features so as to require resort to these former employees.  Indeed, any such a claim would strain credulity.  Given Defendants' continuing use of "Gold Box" and "Lightning Deals," it seems highly likely that both sides can obtain the necessary discovery pertinent to these features from Defendants' current employees, and Defendants have failed to show otherwise.

As for convenience to current Amazon employees, Defendants' showing is likewise woefully inadequate.  In Mr. Dean's declaration submitted by Defendants, he fails to identify by name even a single one of the Seattle-based "Amazon employees knowledgeable about the design, development, and operation of the www.amazon.com website" [Dkt. No. 32-8 at ¶ 4], much less does he show that any of those employees, if needed to testify at trial in Virginia, would be unable or unwilling to make the trip.  Nor have Defendants shown that *any* of their Seattle-based witnesses possesses unique knowledge relevant to this case that is not equally available among their hundreds (or perhaps thousands) of employees located in this District.  Defendants "bear[] the burden of demonstrating that the Eastern District of Virginia is an inconvenient forum in which to litigate, not simply that the [transferee forum] would be more convenient;" they have failed to meet this burden.  *See Samsung,* 386 F. Supp. 2d at 718.

Defendants repeatedly cite the location of documents in Washington state as a convenience factor.  [Dkt. No. 32 at 10, 12.]  The argument is makeweight.  Amazon is one of the world's largest and most sophisticated electronic commerce companies; moving electronic documents from its Washington computers to its Virginia computers should not cause any inconvenience.[15]  "Since most records and documents now can be transported easily or exist in miniaturized or electronic form, especially, for example, the ubiquitous e-mail, their location is entitled to little weight."  *Pinpoint IT Services, LLC v. Atlas IT Exp. Corp.*, 812 F. Supp. 2d 710,

---

[15] With the bulk of Defendants' storage servers located in Northern Virginia, it is likely that copies of many electronic documents already exist in this District.  *See* Ex. 7-10.

721 (E.D. Va. 2011) (citation omitted).

Finally, Defendants cite the difference in distance from Telebuyer's location in Los Angeles to Seattle and Virginia as a convenience factor.  [*See* Dkt. No. 32 at 12.]  It suffices to say that Telebuyer and its counsel do not find Seattle to be more convenient, and do not believe that a two-hour difference in flight time warrants moving the case from the center of Defendants' infringing activities clear across the country.  In patent infringement cases, the bulk of the relevant evidence tends to come from the accused infringer.  *See Jaffe v. LSI Corp.*, 874 F. Supp. 2d 499, 504 (E.D. Va. 2012).  Because Defendants use the accused technology primarily in this District and there are many potential witnesses and significant evidence here, Defendants have failed to meet their substantial burden required to justify a transfer to the Western District of Washington.

**C.      The Interests of Justice Weigh Against Transfer**

The interest this Court has in adjudicating a dispute centered around servers located in Northern Virginia and transactions performed in Northern Virginia weighs strongly in favor of retaining venue in this District.  *See Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp.*, 227 F. Supp. 2d 581, 585 (E.D. Va. 2002) ("interest of justice factors" include the "interest in having local controversies decided at home").  In *Guardian*, the Court held that the interests-of-justice factor "weighs against transfer" due to the nexus between the controversy and citizens in the district.  2013 U.S. Dist. LEXIS 9937 at *40.  The same is true here.

The local interest Virginia has in adjudicating this matter is particularly strong.  The Commonwealth has invested directly in the expansion of Defendants' facilities in Virginia.  Just this May, citing Defendants' "significant Virginia presence as a strong corporate partner and employer," Governor McDonnell approved a $500,000 grant to assist Defendants with their local expansion.  *See* Exs. 12 and 15.  Thus, because the taxpayers in this District helped Defendants

with their local facilities, they have an interest in determining whether the resulting technology infringes the patents-in-suit.  A speedy resolution to this dispute may also help the Commonwealth decide whether it wants to continue encouraging Defendants' local expansion. *See Heinz*, 750 F. Supp. 2d at 670 ("docket conditions … favor retaining this case because statistics reflect that this district, on average, provides a speedier trial").  Thus, the "interests of justice" factor also weighs against a transfer.

## IV. <u>CONCLUSION</u>

Telebuyer's chosen forum is the center of the infringing activity, and should be given great deference.  Defendants have failed to meet their substantial burden to show that the Western District of Washington is a more appropriate and convenient forum for this litigation, and their Motion should be denied.

Dated: September 5, 2013     Respectfully submitted,

            /s/ Craig C. Reilly
            Craig C. Reilly VSB # 20942
            111 Oronoco Street
            Alexandria, Virginia 22314
            Tel: (703) 549-5354
            Fax: (703) 549-2604
            E-mail: craig.reilly@ccreillylaw.com
            *Counsel for Plaintiff*

*Of Counsel for Plaintiff:*

O'MELVENY & MYERS LLP
Mark A. Samuels (*pro hac vice*)
msamuels@omm.com
Brian M. Berliner (*pro hac vice*)
bberliner@omm.com
400 South hope Street
Los Angeles, California 90071-2899
T:  (213) 430-6000
F:  (213) 430-6407
*Counsel for Plaintiff, Telebuyer, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2013, I filed the foregoing pleading or paper through the Court's CM/ECF system which sent a notice of electronic filing to the following attorneys for defendants:

| | |
|---|---|
| Robert A. Angle<br>  robert.angle@troutmansanders.com<br>Dabney J. Carr, IV<br>  dabney.carr@troutmansanders.com<br>TROUTMAN SANDERS LLP<br>1001 Haxall Point<br>Richmond, Virginia  23219 | Mary Catherine Zinsner<br>  mary.zinsner@troutmansanders.com<br>S. Mohsin Reza<br>  mohsin.reza@troutmansanders.com<br>TROUTMAN SANDERS LLP<br>1660 International Drive, Suite 600<br>McLean, VA  22102-3805 |
| Cassius K. Sims (*pro hac vice*)<br>cassius.sims@lw.com<br>LATHAM & WATKINS LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864 | Douglas E. Lumish (*pro hac vice*)<br>doug.lumish@lw.com<br>Richard G. Frenkel (*pro hac vice*)<br>rick.frenkel@lw.com<br>Gabriel S. Gross (*pro hac vice*)<br>gabe.gross@lw.com<br>Patricia Young (*pro hac vice*)<br>patricia.young@lw.com<br>LATHAM & WATKINS LLP<br>140 Scott Drive<br>Menlo Park, CA 94025-1008 |
| | Matthew J. Moore (*pro hac vice*)<br>matthew.moore@lw.com<br>James R. Bender (*pro hac vice*)<br>james.bender@lw.com<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C. 20004-1304 |

*/s/ Craig C. Reilly*

Craig C. Reilly, Esq. VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-2604
craig.reilly@ccreillylaw.com
*Counsel for plaintiff*

-22-