1

2

3

4

5

6

7

The Honorable Barbara J. Rothstein

8          IN THE UNITED STATES DISTRICT COURT
9      FOR THE WESTERN DISTRICT OF WASHINGTON
                        AT SEATTLE

10  TELEBUYER, LLC,

11                  Plaintiff,

12          v.

13  AMAZON.COM, INC., AMAZON WEB           Case No. 2:13-cv-01677-BJR
    SERVICES LLC, and VADATA, INC.,
14
                                           **MOTION FOR SUMMARY**
15                  Defendants.            **JUDGMENT OF INVALIDITY**

16  AMAZON.COM, INC., AMAZON WEB           <u>**Note on Motion Calendar**</u>:
    SERVICES LLC, and VADATA, INC.,        May 4, 2015
17
                    Counterclaimants,      **ORAL ARGUMENT REQUESTED**
18
19          v.

    TELEBUYER, LLC,
20
                    Counterclaim-
21                  Defendant.

22

23

24

25

26

27

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

1

**TABLE OF CONTENTS**

2                                                                                *Page:*

3   INTRODUCTION ------------------------------------------------------------------ 1

4   PROCEDURAL HISTORY -------------------------------------------------------- 3

5   STATEMENT OF UNDISPUTED FACTS------------------------------------------ 4

6          A.     The Parties ------------------------------------------------------- 4

7          B.     The Patents-In-Suit----------------------------------------------- 4

8                 1.     The Written Description of the Invention ------------------------------- 5

9                 2.     The Claims ----------------------------------------------------- 7

10  ARGUMENT  ----------------------------------------------------------------------- 9

11     I.     THE ASSERTED CLAIMS ARE INVALID FOR VIOLATING  THE
               RULE AGAINST FUNCTIONAL CLAIMING. ------------------------------- 9
12

13     II.    THE ASSERTED CLAIMS ARE INVALID FOR VIOLATING  THE
               RULE AGAINST CLAIMING ABSTRACT IDEAS. ------------------------- 10

14          A.     The Asserted Claims Are Directed To An Abstract Idea. ------------------- 11

15          B.     The Asserted Claims Add Nothing Inventive To The
                   Abstract Idea. --------------------------------------------------------- 13
16

17                 1.     Reciting Use Of Generic Computer Components Adds
                          Nothing Inventive. -------------------------------------------- 14

18                 2.     Redrafting Process Claims As "System" Claims Adds
                          Nothing Inventive. -------------------------------------------- 16
19

20                 3.     The Absence Of Specialized Programming Or Algorithms
                          Is Consistent. ------------------------------------------------ 16

21                 4.     The Miscellany Of Other Gratuitous Limitations Are
                          Not Inventive. ------------------------------------------------ 17
22

23                 5.     The Dependent Claims Add Nothing Inventive. ------------------- 18

24                 6.     The Claims Fail The "Machine-Or-Transformation" Test. -------- 19

25  CONCLUSION------------------------------------------------------------------- 20

26

27

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR          - i -                    FENWICK & WEST LLP
                                                    1191 SECOND AVENUE, 10TH FLOOR
                                                    SEATTLE, WASHINGTON  98101
                                                    TELEPHONE  206.389.4510
                                                    FACSIMILE   206.389.4511

1

## TABLE OF AUTHORITIES

2

*Cases:*                                                              *Page(s):*

3

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
4     728 F.3d 1336 (Fed. Cir. 2013)------------------------------------------------ 12, 15, 16, 17

5 *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) --------------------------------------------------------------- *passim*

6 *Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada*,
7     687 F.3d 1266 (Fed. Cir. 2012)------------------------------------------------ 12, 15, 16, 17

8 *Bilski v. Kappos*,
    561 U.S. 593 (2010) ----------------------------------------------------------------- *passim*

9 *buySAFE, Inc. v. Google, Inc.*,
10     765 F.3d 1350 (Fed. Cir. 2014)------------------------------------------------ 11, 12, 15, 17

11 *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    --- F.3d ----, 2014 WL 7272219 (Fed. Cir. Dec. 23, 2014) -------------------------- 8, 12, 19

12 *CyberSource Corp. v. Retail Decisions, Inc.*,
13     654 F.3d 1366 (Fed. Cir. 2011)----------------------------------------------------- *passim*

14 *DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ----------------------------------------------------- 15, 16

15 *Dealertrack, Inc. v. Huber*,
16     674 F.3d 1315 (Fed. Cir. 2012)------------------------------------------------ 12, 13, 15, 17

17 *Fort Properties, Inc. v. American Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012)-------------------------------------------------------- 12, 15

18 *Funk Bros. Seed Co. v. Kalo Inoculant Co.*,
19     333 U. S. 127 (1948) --------------------------------------------------------------------- 10

20 *Gottschalk v. Benson*,
    409 U.S. 63 (1972) ----------------------------------------------------------------------- 16

21 *Graham v. John Deere Co.*,
22     383 U.S. 1 (1966) ------------------------------------------------------------------------ 20

23 *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    --- F. Supp. 2d ----, No. 2:13-CV-655,
    2014 WL 4364848 (E.D. Tex. Sept. 3, 2014)--------------------------------------------- 3
24

25 *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) --------------------------------------------------------- 10, 11, 14, 18

26 *Motion Picture Co. v. Universal Film Co.*,
27     243 U.S. 502 (1917) ---------------------------------------------------------------------- 20

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR        - ii -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

*Parker v. Flook*,
    437 U.S. 584 (1978) ------------------------------------------------------------- 10

*Planet Bingo, LLC v. VKGS, LLC*,
    961 F. Supp. 2d 840 (W.D. Mich. 2013),
    *aff'd*, 576 F. App'x 1005 (Fed. Cir. 2014) ------------------------------------- 17, 18

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) -------------------------------------------- *passim*

*Statutes:*

35 U.S.C. § 101 -------------------------------------------------------------- *passim*

35 U.S.C. § 112 -------------------------------------------------------------- 9, 20

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR                     - iii -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

**INTRODUCTION**

1

2      Amazon's *Markman* briefing argued that Telebuyer's patents violate the more than 150

3   year-old rule against claiming naked functions—that is, claiming inventions by what they

4   *achieve* as opposed to what they *are*.  Again, Telebuyer's patents disclose no computing hard-

5   ware that, without highly specialized and extremely sophisticated programming, would perform

6   the catalog of complex e-commerce functions achieved by Telebuyer's "groundbreaking" and

7   "revolutionary" traffic control system.  And again, Telebuyer's patents disclose no specialized

8   programming, system logic, or algorithms that would transform otherwise generic hardware into

9   something groundbreaking and revolutionary.  Those defects are now fully briefed, are incorpo-

10  rated herein by reference, and constitute the first ground for this motion.

11     The second ground for this motion arises out of Telebuyer's response to those briefs.

12  Telebuyer's response never argued (understandably) that its patents disclose any computing

13  hardware that, without specialized programming, would perform the complex functions achieved

14  by Telebuyer's traffic control system.  Nor did Telebuyer's response argue (again, understanda-

15  bly) that its patents somehow disclose specialized programming, system logic, or software algo-

16  rithms that would cause otherwise generic hardware to perform those functions.  Instead—and

17  this is important—Telebuyer argued that its "groundbreaking" and "revolutionary" traffic control

18  system is comprised solely of generic computing devices (*e.g.*, controllers, processors, memo-

19  ries, video cameras, *etc.*) performing generic and inherent computing functions, and that these

20  generic computing devices would have been well known (*i.e.*, identifiable) to persons of skill at

21  the time of the original patent application.  In other words, Telebuyer now argues that a person of

22  skill would know what its traffic control system *is*, not just what it *achieves*, by reference to

23  these generic computing devices performing their generic and inherent functions.  But that is not

24  a square on which Telebuyer may safely place its king.  To the contrary, that square is tightly

25  controlled by yet another 150 year-old cornerstone of American patent law—the prohibition

26  against owning naked ideas disembodied from actual inventions.

27     The rule against owning disembodied ideas is a judicial interpretation of 35 U.S.C. § 101,

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR                    - 1 -                    FENWICK & WEST LLP
                                                                       1191 SECOND AVENUE, 10TH FLOOR
                                                                       SEATTLE, WASHINGTON 98101
                                                                       TELEPHONE 206.389.4510
                                                                       FACSIMILE  206.389.4511

which prevents a patentee from owning laws of nature, natural phenomena, and abstract ideas, including fundamental economic practices long prevalent in our system of commerce. In the modern computer age, claiming to own a fundamental economic practice running on generic computers performing generic functions is not inventive—it is, in effect, no different than claiming to own the economic practice itself. And so, when Telebuyer's generic computing devices are stripped of all inventive weight—as they must under an unbroken chain of recent Supreme Court and Federal Circuit precedent—Telebuyer's claims devolve into nothing more than the fundamental economic practice of facilitating commerce by connecting buyers and sellers. That fundamental economic practice is not an invention. It may never be owned by anyone. And any attempt to do so is invalid under our patent laws.

These two cornerstone rules—the rule against owning naked functions and the rule against owning naked ideas—are closely interrelated wherever, as here, patents are both ambitious in scope and technologically vacuous. These patents simply describe a problem, announce purely functional and generic steps that purport to solve that problem, and recite standard computer operations to perform those steps without any "inventive concept" or something "significantly more" than an idea or an objective. As Federal Circuit Judge Bryson recently explained (sitting by designation in a district court case involving patents no less ambitious, argotic, and anemic), the problem is that such patents contribute nothing to the public store of knowledge even while depriving the public of the benefits of true invention performed by others at a later date.

> [S]uch patents, although frequently dressed up in the argot of invention, simply describe a problem, announce purely functional steps that purport to solve the problem, and recite standard computer operations to perform some of those steps. The principal flaw in these patents is that they do not contain an "inventive concept" that solves practical problems and ensures that the patent is directed to something "significantly more than" the ineligible abstract idea itself. As such, they represent little more than functional descriptions of objectives, rather than inventive solutions. In addition, because they describe the claimed methods in functional terms, they preempt any subsequent specific solutions to the problem at issue.

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR                - 2 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

1   *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, --- F. Supp. 2d ----, No. 2:13-CV-655, 2014

2   WL 4364848, at *13 (E.D. Tex. Sept. 3, 2014) (granting summary judgment of invalidity under

3   § 101) (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355, 2357 (2014)).

4       Those words could have been written for this case.  Applying that reasoning here, togeth-

5   er with the reasoning set forth in Amazon's *Markman* briefs and in this brief, Amazon respectful-

6   ly moves for summary judgment that the asserted claims of Telebuyer's patents are invalid as a

7   matter of law.

8   **PROCEDURAL HISTORY**

9       On July 22, 2013, Telebuyer sued Amazon.com, Inc., Amazon Web Services LLC, and

10  VADATA, Inc. (collectively, "Amazon") in the United States District Court for the Eastern Dis-

11  trict of Virginia, alleging infringement of seven United States Patents comprising nearly 800

12  claims relating generally to electronic commerce.  (D.I. 86 at 11.)  On September 13, 2013, the

13  Eastern District of Virginia transferred the case to this Court.  (D.I. 49 at 1.)  On October 16,

14  2014, the Court ordered Telebuyer to limit the number of asserted claims to 32.  (D.I. 165.)  On

15  October 13, 2014, the parties concluded briefing on claim construction, which included Ama-

16  zon's arguments about impermissible functional claiming.  (D.I. 152-55, 161-64.)

17      On December 17, 2014, the Court conducted a technology tutorial hearing directed to the

18  disclosures in Telebuyer's patents and the 27 separate Amazon technologies that Telebuyer ac-

19  cuses of infringement.  (D.I. 191, Tutorial Hr'g Tr. 47:17-22, Dec. 17, 2014.)  At the end of the

20  hearing, the Court proposed staying further claim construction proceedings pending a decision

21  on the problem of functional claiming, which Telebuyer's counsel agreed is "a threshold issue."

22  (*Id.* at 70:1-3 ("It's a threshold issue.  If Amazon is right, it's outcome determinative and the case

23  goes on its way."); *see also id.* at 76:2-6 ("[THE COURT:] Because if it's indefinite … in some

24  way that doesn't have structure or algorithms or whatever it needs, that's the end of the case, as

25  far as I see it.").)  The Court also raised, *sua sponte*, whether Telebuyer's patents suffer from ad-

26  ditional defects under 35 U.S.C. § 101 as construed by "cases like *Bilski* and *Alice*," which, in

27  the Court's view, "must be dealt with at some point."  (*Id.* at 72:8-12.)  As the Court correctly

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR                                    - 3 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

1 observed, the problem of functional claiming and the problem of patent eligibility "overlap" like
2 "two sides of the same coin," and thus the Court "should deal with it all at once." (*Id.* at 73:11-
3 22.) The Court granted Amazon leave to move for summary judgment on both grounds, ordering
4 supplemental briefing limited to 35 U.S.C. § 101.

5      This is Amazon's motion for summary judgment on both grounds and its opening brief
6 under 35 U.S.C. § 101.

**STATEMENT OF UNDISPUTED FACTS**

8      **A.**    **The Parties**

9      Telebuyer is a California limited liability company formed by Ronald A. Katz. (*See* D.I.
10 1; D.I. 145 at 1-2.) Amazon.com, Inc. is the world's leading online retailer with its headquarters
11 in Seattle, Washington. (*See* D.I. 75 ¶ 2.) Amazon Web Services Inc. is an Amazon subsidiary
12 that provides cloud computing infrastructure to numerous small and large private enterprises as
13 well as the United States government and governments of the separate States. VADATA, Inc. is
14 another Amazon subsidiary that operates data centers used by both www.amazon.com and Ama-
15 zon Web Services. (*Id.* ¶¶ 3-4, 28.)

16      **B.**    **The Patents-In-Suit**

17      Telebuyer asserts 32 claims from seven related U.S. patents: U.S. Patent Nos. 6,323,894
18 ("the '894 Patent"), 7,835,508 ("the '508 Patent"), 7,835,509 ("the '509 Patent"), 7,839,984
19 ("the '984 Patent"), 8,059,796 ("the '796 Patent"), 8,098,272 ("the '272 Patent"), and 8,315,364
20 ("the '364 Patent"). (D.I. 174.)[1] The first six patents share the same specification while the '364
21 Patent adds new matter not relevant to this motion.[2] All seven patents disclose connecting buy-
22 ers and sellers to facilitate commerce using known telephones, video cameras, computers and a
23 telephone network.

24     [1] Claims 1, 34, 48 and 185 of the '894 Patent; claim 85 of the '508 Patent; Claims 1, 9, 11,
25 35, 36, 53, 57, 74, 85 and 88 of the '509 Patent; claims 157 and 160 of the ' 984 Patent; claims 1,
24, 32, 41, 46, 70 and 73of the '796 Patent; claims 31 and 47 of the '272 Patent; and claims 47,
26 50, 52, 55, 89 and 103 of the '364 Patent. (D.I. 174.) The '894 and '364 Patents are Exhibits 1
and 2, respectively, to the Declaration of Richard G. Frenkel, and the claims of the remaining
27 patents are Exhibits 3-7.

    [2] For convenience, all citations to the specifications are to the '894 Patent.

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

### 1.      The Written Description of the Invention

The written description describes developments in video-conferencing and visual communication technology invented by others.  "Technical breakthroughs in audio and video compression technology make desktop video conferencing and visual communication both economical and practical for everyday business communications," and "innovative technical advances are fast satisfying promises of enhanced capabilities."  ('894 Patent at 2:29-32, 2:24-26.)  But those breakthroughs are not the present invention.  The present invention is a purportedly novel "traffic control system for providing video communication through a dial-up telephone system, for selectively interfacing members of plural groups, for example, wholesale buyer groups and vendor groups."  (*Id*. at 1:27-31.)  This "traffic control system" can be used for "a variety of applications, such as for directing and exchanging offers … for analyzing and compiling data, scheduling and implementing conferences, consummating sales and the like."  (*Id*. at 1:31-36.)  This "traffic control system" can also "expedite traditionally complex purchasing operations."  (*Id*. at 4:21-22.)  In all, the "traffic control system" is said to achieve at least 34 different computing results,[3] many of which were presented graphically to the Court in slide 16 of Amazon's technology tutorial:

---

[3] The traffic control system is said to perform at least the following functions: "indicate an established relationship" to "isolate a vendor from a plurality of vendors" ('894 Patent at 10:16-19); allow buyers "to access a blank form and enter the specific information" about merchandise (*id*. at 24:35-48); create a record of charges incurred by each buyer or vendor (*id*. at 6:3-10); communicate with color video including motion (*id*. at 4:7-11); fetch vendor telephone numbers (*id*. at 5:33-37); determine a buyer's efficiency in terms of the amount of time the buyer takes for each of its video call appointments (*id*. at 8:30-44); initiate contact with vendor locations or buyer locations either in a predetermined sequence or randomly (*id*. at 11:25-31); analyze and compile data relating to members (*id*. at 1:31-36, 3:30-37); establish a cross-reference number identifying vendor transactions with buyers (*id*. at 10:24-27); maintain a record of outbound calls by buyers and vendors (*id*. at 8:15-25); display vendor data, such as telephone number or rating (*id*. at 5:38-45); transfer calls from vendors or buyers seeking appointments or the like to a human operator (*id*. at 12:21-29, 18:48-54); record video communications (*id*. at Abstract, 12:53-63); assign identification numbers to vendors (*id*. at 9:49-55); classify buyer and seller calls into types (*id*. at 4:24-28); issue an identification card with a check digit for qualification for each representative of a selling or buying company (*id*. at 17:66-18:3); allow interfacing with audio response units to provide automatic responses for vendors or buyers seeking information or trying to make an appointment (*id*. at 16:9-29, 18:29-47); schedule appointments (*id*. at 1:31-36, 3:30-37); allow vendors and buyers to deposit a video recording of a product being offered by a vendor or desired by a buyer (*id*. at 13:26-29); classifying offers and responses (*id*. at 4:24-28); designate vendor dependability, efficiency at delivering, credit worthiness, and specific buyer

(Amazon Tech. Tutorial, Slide 16.) [4]

Telebuyer elsewhere describes this traffic control system as "groundbreaking" and "revolutionary." [5]  But the Court will search in vain for any groundbreaking or revolutionary hardware that, without highly specialized programming, achieves all of these complex computing results. The Court will search in vain, too, for any specialized programming, system logic, or algorithms that change otherwise generic hardware into anything "groundbreaking" or "revolutionary."  And finally, the Court will search in vain for any argument to the contrary by Telebuyer, at least thus

organizations with which the vendor is registered, in order to come up with a vendor rating (*id.* at 10:11-15); auto-dial vendors via the public telephone system (*id.* at 5:33-37); route telephone calls to the next available operator or another buyer, in the event that all of the communication lines are occupied and there is a considerable backlog of calls (*id.* at 5:56-65); prioritize calls based on criteria (*id.* at 5:66-6:2); reschedule appointments (*id.* at 5:7-12); implement face-to-face conferences in real time between buyers and sellers (*id.* at 1:31-36, 3:30-37); interface buyers and sellers (*id.* at cl. 1); consummate transactions and billing relating to transactions between buyers and sellers (*id.* at 1:31-34, 3:30-36); exchange offers and responses at the wholesale level, between selective members of plural groups (*id.* at 1:31-36, 3:30-37); identify a particular product of interest (*id.* at 19:8-14); forward "[r]ecent changes to appointments or special offerings and proposals" (*id.* at 18:60-63); compare vendor outbound calls with a database of buyers (*id.* at 8:25-28); register and qualify members (*id.* at 4:28-33); and call vendor locations, determined by consulting a database of vendor locations qualified for the particular merchandise for which the buyer requests proposals (*id.* at 8:45-52).

[4] A more comprehensive discussion of the common patent specification is in Amazon's *Markman* briefs (D.I. 154 at 13-18; D.I. 163 at 8-12), which again are incorporated by reference.

[5] *See* D.I. 152 at 1 (describing "seven groundbreaking patents"); *see also id.* (stating that the "traffic control system" enables "a number of then revolutionary features").

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

1    far in these proceedings.  Telebuyer has been emphatic that its traffic control system is any ge-

2    neric "computer system that receives, processes, stores, and sends information." (D.I. 152 at 9;

3    *see also* D.I. 161 at 5.)  It is, therefore, nothing new.  It is instead a "known type of computer

4    system," one comprised of computing devices having "well-known structural meanings" "used

5    prevalently by contemporaneous patents and technical publications to describe structure" (D.I.

6    152 at 10, 15-16) such as "interface system[s]," "storage memor[ies]," and "control unit[s]" (*id.*

7    at 6-7, 20-21, 24-25) that are well "understood by ordinarily skilled persons to refer to certain

8    classes of structure" (D.I. 161 at 7).  At the same time, Telebuyer has never argued that any of

9    these generic and well-known computing devices inherently achieves, without highly specialized

10   programming, any (much less all) of the 34 computing results achieved by this "groundbreaking"

11   and "revolutionary" traffic control system.  Telebuyer's position at the technology tutorial hear-

12   ing was consistent.  (*See, e.g.*, Tutorial Hr'g Tr. 19:4-7 ("This, again, shows that the term [con-

13   trol computer] was well understood by persons skilled in the art and that further description of

14   'control computers' in the patent was unnecessary."); *id.* at 19:21-23 ("This shows that the video

15   file server was well understood by persons in the art, skilled in the art, at the time of the inven-

16   tion."); *id.* at 20:16-18 ("[A]ll of these different types of memory devices were known and un-

17   derstood by persons having ordinary skill in the art.").)

18                    **2.    The Claims**

19          Representative Claim 1 of the '894 Patent recites a method of using a "traffic control sys-

20   tem" for "directing and exchanging" communications "to accomplish transactions" by (1) "inter-

21   facing" buyers and sellers, (2) receiving buyers' requests for a transaction in an area of interest,

22   (3) receiving identifying information from the buyer, (4) storing data about the buyer's request,

23   (5) providing the buyer with a video relating to the request, (6) storing billing data about the re-

24   sulting transaction, and (7) sending a confirmation of the transaction.  Representative Claim 1 of

25   the '509 Patent recites using a "central control" station to "control[] buyer and vendor communi-

26   cation via public data communication links" by (1) "notifying" the buyers of vendor offers,

27   (2) "interfacing" buyers with the station, (3) "receiving … identification data" from the buyers,

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR                    - 7 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

1  (4) "verifying" that data before providing the buyers with a video presentation about the offer,

2  and (5) "facilitating" email communication with the buyer once a transaction is complete.  Rep-

3  resentative Claim 157 of the '984 Patent recites using a "control" unit for (1) "selectively inter-

4  facing" vendors with an interested buyer who has used an "electronic device adapted for video

5  communication" to indicate an area of interest, (2) "providing the interested party … with high

6  resolution video data and text data relating to the area of interest," and (3) "transferring" the

7  buyer to a vendor's "live operator relating to the area of interest."  The remaining asserted inde-

8  pendent claims are comparable.  All recite what amount to only routine and conventional—and

9  even inherent—steps for facilitating face-to-face commerce.  (See '894 Patent at cl. 185; '508

10  Patent at cl. 85; '509 Patent at cl. 35, 53, 57, 74, 85; '796 Patent at cl. 1, 24, 70; '272 Patent at cl.

11  31; '364 Patent at cl. 47; see also '364 Patent at cl. 76 (unasserted independent claim from which

12  asserted claim 89 depends).)  None recites any specialized algorithm, specialized hardware, or

13  specialized machine of any kind.  To the extent machines are mentioned at all, they are limited to

14  general purpose computing components, such as a "personal computer," a "storage memory," a

15  "video memory," a "remote terminal," a "processor," an "interface," a "public communication

16  system," or "public data communication links."  (See, e.g., '894 Patent at cl. 1; '508 Patent at cl.

17  85; '509 Patent at cl. 35; '984 Patent at cl. 157; '796 Patent at cl. 1; '272 Patent at cl. 31; '364

18  Patent at cl. 47.)

19      The dependent claims add nothing relevant to this motion.  Some (referred to herein as

20  "Group A Claims")[6] add the data-gathering step of obtaining buyers' reactions to offers.  ('894

21  Patent at cl. 48; '364 Patent at cl. 50, 55).  Others (referred to herein as "Group B Claims") add

22  other routine and conventional devices and functions—such as using a mouse ('894 Patent at cl.

23  34), using email ('509 Patent at cl. 9), interacting with a live operator "via voice" or "via live

24  video" ('984 Patent at cls. 157, 160), grouping buyers based on areas of interest ('796 Patent at

---

25      [6] Courts routinely analyze claims in groups based on representative claims when they are

26  sufficiently similar for purposes of patent-eligibility under § 101.  See, e.g., Alice, 134 S. Ct. at
2359-60 (collectively analyzing and holding invalid 208 computer method, system and media

27  claims); Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A., --- F.3d ----, 2014
WL 7272219, at *1-2 (Fed. Cir. Dec. 23, 2014) (same for 242 computer method claims).

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR                - 8 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

1   cl. 41), categorizing areas of interest ('796 Patent at cl. 46), specifying details about the video

2   communications ('509 Patent at cl. 11, 36, 88; '796 Patent at cl. 32, 73; '272 Patent at cl. 47;

3   '364 Patent at cl. 103), providing limited-time offerings ('364 Patent at cl. 52), and targeting

4   buyers based on past communications ('364 Patent at cl. 89).  None meaningfully adds to or lim-

5   its the independent claims from which they depend.  All recite only a different permutation of the

6   fundamental economic practice of connecting buyers and sellers to facilitate commerce using

7   generic computers for their generic functions.

8                                                  **ARGUMENT**

9          The Court was entirely correct when it observed during the technology tutorial that the

10  rule against owning naked functions, on the one hand, and the rule against owning naked ideas,

11  on the other, overlap.  They overlap because each rule protects the public from overlapping

12  harms.  The rule against owning naked functions protects the public's right to benefit from future

13  technologies that perform the same functions in better or at least different ways.  And the rule

14  against owning naked ideas protects the public's right to use fundamental technical principles

15  and economic practices for all purposes, including for use in real inventions.  But when a patent

16  discloses no real invention in the first place, and yet claims to own a fundamental economic

17  practice, that patent violates both rules.  Here, Telebuyer's patents violate both rules because

18  they claim to own the fundamental economic practice of connecting buyers and sellers while dis-

19  closing no inventive way of doing so.

20  **I.      THE ASSERTED CLAIMS ARE INVALID FOR VIOLATING
            THE RULE AGAINST FUNCTIONAL CLAIMING.**

21

22         For the reasons stated in Amazon's *Markman* briefs, Telebuyer's claims violate the rule

23  against functional claiming, which renders all of them indefinite under 35 U.S.C. § 112 and inva-

24  lid as a matter of law.[7]

25         [7]  Amazon respectfully requests a ruling on this ground even if the Court grants summary
    judgment under 35 U.S.C. § 101.  This unusual request is closely tied to the unusual importance
26  of the issue for American technology companies, including small and start-up technology com-
    panies, which struggle daily under the crush of vacuous patents that claim to own aspirational
27  computing functions while disclosing no way of achieving them.  Amazon, therefore, respectful-
    ly seeks to preserve this issue for the highest level of appellate review with the intention of

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR                        - 9 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

1

2

## II.   THE ASSERTED CLAIMS ARE INVALID FOR VIOLATING THE RULE AGAINST CLAIMING ABSTRACT IDEAS.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  For more than 150 years, the Supreme Court has construed that statute to exclude laws of nature, physical phenomena, and abstract ideas.  *Bilski v. Kappos*, 561 U.S. 593, 601-02 (2010) ("[T]hese exceptions have defined the reach of the statute as a matter of statutory *stare decisis* going back 150 years.").  These fundamental tools of human understanding and experience may never be owned by anyone.  They are instead "part of the storehouse of knowledge of all men … free to all men and reserved exclusively to none."  *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U. S. 127, 130 (1948).  "'[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it,' thereby thwarting the primary object of the patent laws."  *Alice*, 134 S. Ct. at 2354 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012)).  The Supreme Court has reinforced this rule no fewer than three times in the last five years.  *Alice*, *supra*; *Bilski*, *supra*; *Mayo*, *supra*.

18

19

20

21

22

23

24

25

26

Two of those decisions are especially important for this case.  The first, *Bilski*, held that § 101's exception for abstract ideas extends to any "fundamental economic practice long prevalent in our system of commerce."  561 U.S. at 611 (quotation omitted).  The second, *Alice*, reached the same conclusion but also invigorated a related rule, discussed at length by Justice Stevens in *Parker v. Flook*, 437 U.S. 584, 593-95 (1978), that "merely requiring generic computer implementation fails to transform [an] abstract idea into a patent-eligible invention."  *Alice*, 134 S. Ct. at 2352.  Mr. Bilski, therefore, could not own the fundamental economic practice of hedging risk in commodity transactions, *Bilski*, 561 U.S. at 599, 611-12, and Alice Corporation could not own the fundamental economic practice of intermediated financial settlement, even

27

bringing more clarity to this vital area of our patent law.

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR                      - 10 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

1   when automated with generic computer equipment, *Alice*, 134 S. Ct. at 2356-57.  Since *Bilski*,

2   and especially since *Alice*, the Federal Circuit has invalidated a host of patents claiming generic

3   computer implementation of otherwise fundamental principles of economics or commerce.  *See*

4   *infra* at 12-15 (discussing cases).

5          *Alice's* two-step "framework" controls the analysis.  First, courts determine whether pa-

6   tent claims are directed to an underlying abstract idea.  *Alice*, 134 S. Ct. at 2355.  Second, courts

7   determine whether the claims "contain[] an 'inventive concept' sufficient to 'transform' the

8   claimed abstract idea into a patent-eligible application."  *Id.* at 2357 (quoting *Mayo*, 132 S. Ct. at

9   1294, 1298).  Simply implementing an abstract idea using generic computer components for their

10  inherent functions, or limiting an idea to a particular field of use, or adding data-gathering steps,

11  or adding any other token post- or extra-solution activity is now plainly insufficient.  *Alice*, 134

12  S. Ct. at 2357-59.  Applying this two-step approach, "it is a straightforward matter to conclude

13  that the claims in this case are invalid."  *buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1355

14  (Fed. Cir. 2014).

15              **A.     The Asserted Claims Are Directed To An Abstract Idea.**

16         Telebuyer's claims undeniably implicate a fundamental economic practice long prevalent

17  in our system of commerce—namely, connecting buyers and sellers and facilitating face-to-face

18  commerce.  For example, the asserted independent method and system claims recite "directing,"

19  "exchanging," "enabling," "facilitating," "control[ling]," or "accomplishing" communications

20  between buyers and sellers ('894 Patent at cl. 1, 185; '508 Patent at cl. 85; '509 Patent at cl. 1,

21  35, 53, 57, 74, 85; '984 Patent at cl. 157; '796 Patent at cl. 1, 24, 70; '272 Patent at cl. 31; '364

22  Patent at cl. 47) "to accomplish transactions [relating to] merchandise or [a service] available for

23  purchase" ('894 Patent at cl. 1; '509 Patent at cl. 35, 53, 57, 74; '364 Patent at cl. 47), "for the

24  possible consummation of transactions" ('796 Patent at claim 24), or otherwise to facilitate

25  commercial offers or transactions ('894 Patent at cl. 185; '508 Patent at cl. 85; '509 Patent at cl.

26  1, 85; '984 Patent at cl. 157; '796 Patent at cl. 1, 70; '272 Patent at cl. 31; *see also* '364 Patent at

27  cl. 76 (unasserted independent claim from which asserted claim 89 depends).)

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR            - 11 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

Face-to-face commerce is, of course, as old as humanity itself.  And it is a practice no less abstract than the fundamental economic practices recently found patent-ineligible by the Supreme Court and Federal Circuit.  There is simply "no meaningful distinction," *Alice*, 134 S. Ct. at 2356-57, between using computers (Telebuyer's "traffic control system") as an intermediary to facilitate commerce *generally*, on the one hand, and using computers as an intermediary to facilitate *particular* financial settlements, as in *Alice*.  Nor is there any meaningful distinction between Telebuyer's claims and the advertising and media distribution claims in *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-15 (Fed. Cir. 2014), or the information management claims in *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333-34 (Fed. Cir. 2012), or the Internet transaction verification claims in *buySAFE*, 765 F.3d at 1351, or the organization management claims in *Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1346 (Fed. Cir. 2013), or the life insurance management claims in *Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1280-81 (Fed. Cir. 2012), or the real estate investment claims in *Fort Properties, Inc. v. American Master Lease LLC*, 671 F.3d 1317, 1322-23 (Fed. Cir. 2012), or the Internet security claims in *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1374-76 (Fed. Cir. 2011).  *See also Content Extraction*, 2014 WL 7272219, at *3 (finding abstract claims directed to "[t]he concept of data collection, recognition, and storage").

To be sure, Telebuyer's claims struggle to disguise their abstract nature by subdividing and deconstructing ordinary commerce into numerous disaggregated and constituent parts.  But so did the claims in *Alice*, which subdivided the idea of intermediated settlement into (1) "creating" shadow records for each counterparty to a transaction, (2) "obtaining" the parties' start-of-day balances, (3) "adjusting" the shadow records as transactions occur, and (4) issuing end-of-day instructions to complete the transactions for which there are sufficient funds.  134 S. Ct. at 2359.  So did the claims in *Bilski*, which subdivided the idea of commodity hedging into (1) initiating a series of financial transactions at a fixed rate based on historical averages, where the fixed rate corresponds to a risk position of buyers, (2) identifying sellers having a counter-risk position to those buyers, and (3) initiating a series of financial transactions between buyers

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR                    - 12 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

1   and sellers to balance the risk.  561 U.S. at 599.  So did the claims in *Dealertrack*, which subdi-

2   vided the idea of an information clearinghouse into (1) "receiving data from one source," (2) "se-

3   lectively forwarding the data," and (3) "forwarding reply data to the first source."  674 F.3d at

4   1333.  And finally, so did the claims in *Ultramercial*, which subdivided the idea to use Internet

5   advertisements as currency into no fewer than 11 parts and subparts, including (1) selecting an

6   advertisement, (2) offering media to the consumer in exchange for watching or interacting with

7   the ad, (3) receiving a request to view the ad, (4) facilitating display of the ad, (5) allowing the

8   consumer access to the media, (6) updating an activity log, and (7) receiving payment from the

9   ad's sponsor.  772 F.3d at 714-15.  In each case, the Supreme Court and Federal Circuit rejected

10  these contrivances of the "'draftsman's art'" and held that all of these claims, despite being sub-

11  divided into numerous parts and subparts, were at bottom "methods of organizing human activi-

12  ty," *Alice*, 134 S. Ct. at 2359 (citation omitted), 2356, and thus required further analysis under

13  *Alice*'s step two—an analysis none would survive.

14      The same is true for Telebuyer's claims.  Just as in *Alice*, *Bilski*, *Dealertrack*, and *Ultra-*

15  *mercial*, Telebuyer's claims are plainly directed to methods of organizing human activity—

16  connecting buyers and sellers to facilitate commerce—notwithstanding the numerous parts and

17  subparts into which those methods have been subdivided.  The only question, therefore, is

18  whether Telebuyer's claims add some "'inventive concept'—*i.e.*, an element or combination of

19  elements that is sufficient to ensure that the patent in practice amounts to significantly more than

20  a patent upon the [ineligible concept] itself."  *Alice*, 134 S. Ct. at 2355 (citation omitted).  They

21  do not.

### B.   The Asserted Claims Add Nothing Inventive To The Abstract Idea.

24      Telebuyer's claims fail *Alice's* second step, too, because they add only generic computer

25  functions and equipment, together with other conventional elements, which are entitled to no in-

26  ventive weight as a matter of law.

27

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR          - 13 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

1

2

### 1.   Reciting Use Of Generic Computer Components Adds Nothing Inventive.

3       Telebuyer's computer elements are entitled to no inventive weight.  Those elements re-

4   cite nothing more than generic computer components—such as a "personal computer," a "stor-

5   age memory," a "video memory," a "remote terminal," a "processor," an "interface," a "public

6   communication system," or "public data communication links" (*e.g.*, '894 Patent at cl. 1; '508

7   Patent at cl. 85; '509 Patent at cl. 35; '984 Patent at cl. 157; '796 Patent at cl. 1; '272 Patent at cl.

8   31; '364 Patent at cl. 47)—used for their generic functions—such as "receiving ... data," "storing

9   … data," "obtain[ing] … data," "electronically transmitting" data, and "displaying … data" (*e.g.*,

10   '894 Patent at cl. 1).  These generic, well-understood, and routine computing devices used for

11   generic, well-understood, and routine computing functions are simply irrelevant.  As a matter of

12   common sense, the hard work of true invention demands much more.  As a matter of law, so

13   does § 101.

14       The Supreme Court in *Alice*, for example, explained that storing data in a database is not

15   inventive because it is "one of the most basic functions of a computer," and that "[t]he same is

16   true with respect to the use of a computer to obtain data," "track multiple transactions," "adjust

17   account balances," and "issue automated instructions" "simultaneously."  134 S. Ct. at 2359.

18   "[A]ll of these computer functions," the Court observed, "are 'well-understood, routine, conven-

19   tional activit[ies]' previously known to the industry," and are therefore entitled to no inventive

20   weight under § 101.  *Id.* (second alteration in original) (quoting *Mayo*, 132 S. Ct. at 1294).  The

21   Court observed further that reciting generic computing components such as "a 'data processing

22   system' with a 'communications controller' and a 'data storage unit'" provides no "meaningful

23   limitation beyond generally linking the use of the method to a particular technological environ-

24   ment."  *Alice*, 132 S. Ct. at 2360 (internal brackets, quotation marks, and citations omitted).  The

25   Federal Circuit, too, in *Ultramercial* and *buySAFE*, accorded no weight to claim elements that

26   recited transmission of data over a network because the "transfer of content between computers

27   is merely what computers do," *Ultramercial*, 772 F.3d at 717, and because "receiv[ing] and

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR            - 14 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

1  send[ing] … information … is not even arguably inventive," *buySAFE*, 765 F.3d at 1355.  And

2  in *Bancorp*, the Federal Circuit accorded no weight to elements that recited a "generator," a "cal-

3  culator," and a "digital storage" unit because such generic, well-understood, and routine compu-

4  ting devices cannot "salvage an otherwise patent-ineligible process."  687 F.3d at 1274, 1278.

5        The rule makes perfect sense.  The naked insight to automate pre-computer-era (to say

6  nothing of ancient) human activities, or perform them more efficiently, using generic computers

7  for their generic, well-understood, and routine functions cannot possibly be inventive.  That in-

8  sight adds nothing—much less something "significantly more"—to a basic idea, and is thus no

9  different than owning the idea itself.  As the Federal Circuit explained in *Bancorp*, the obvious

10  fact that a computer, programmed in some unspecified way, is able to perform some ancient hu-

11  man task "'more quickly'" makes no difference because the "use of a computer in an otherwise

12  patent-ineligible process for no more than its most basic function—making calculations or com-

13  putations—fails to circumvent the prohibition against patenting abstract ideas and mental pro-

14  cesses."  *Id.* at 1278 (citation omitted).  The rule has been applied to a host of generic, well-

15  understood, and routine computing functions.  *See, e.g.*, *Accenture*, 728 F.3d at 1338 (automati-

16  cally "transmit[ting]" and "receiv[ing]" data and generating tasks); *Dealertrack*, 674 F.3d at

17  1333 (automatically and selectively forwarding information and forwarding reply data); *Fort*

18  *Props.*, 671 F.3d at 1322-24 (automatically generating deedshares); *CyberSource*, 654 F.3d at

19  1373-74 (automatically matching new credit card transactions against past transactions using

20  common Internet addresses); *see also Ultramercial*, 772 F.3d at 717 ("adding a computer [or the

21  Internet] to otherwise conventional steps does not make an invention patent-eligible.").  Indeed,

22  even in the sole post-*Alice* decision where a Federal Circuit panel (albeit a deeply divided one)

23  rejected a § 101 challenge, the majority was emphatic that there is nothing inventive about "ap-

24  plying a known business process to the particular technological environment of the Internet," or

25  in "creating or altering contractual relations using generic computer functions and conventional

26  network operations," or in "merely recit[ing] the performance of some business practice known

27  from the pre-Internet world along with the requirement to perform it on the Internet."  *DDR*

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR                        - 15 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

1   *Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259, 1264 (Fed. Cir. 2014).[8]

2          **2.     Redrafting Process Claims As "System"**

3                  **Claims Adds Nothing Inventive.**

4          It makes no difference that some of the claims are drafted as "systems" instead of pro-

5   cesses.  (*E.g.*, '508 Patent at cl. 85; '796 at cl. 1.)  Redrafting a "process" claim as a "system"

6   claim will not circumvent the rule, just as it did not circumvent the rule in *Alice*, *Accenture*, *Ban-*

7   *corp*, and *CyberSource*.  These artificial and fictional claims, where some unidentified "system"

8   simply performs the steps of the claimed process, are mere contrivances of the "draftsman's art"

9   on which the important question of patent eligibility cannot possibly depend.  As the Supreme

10  Court held in *Alice*, for example, "the system claims are no different from the method claims in

11  substance" because "the system claims recite a handful of generic computer components config-

12  ured to implement the same idea" as the method claims and "[t]his Court has long 'warn[ed] ...

13  against' interpreting § 101 'in ways that make patent eligibility depend simply on the drafts-

14  man's art.'"  134 S. Ct. at 2360 (citation omitted).

15         **3.     The Absence Of Specialized Programming**

16                 **Or Algorithms Is Consistent.**

17         Telebuyer's patents (not just the claims) are devoid of any specialized software, system

18

19         [8] Telebuyer's claims could, of course, be performed even without a computer.  A person
    acting as an intermediary (such as a broker) could perform the basic claim steps "by human
20  thought alone"—or at least with a pen and paper—by keeping a list of buyers' and sellers' areas
    of interest and past commercial activities, and based on that data provide targeted visual
21  communications relating to the product offerings.  *See CyberSource*, 654 F.3d at 1373.  In fact,
    some claims expressly rely on a "live operator" to assist in facilitating the transactions.  (*See*,
22  *e.g.*, '984 Patent at cl. 157; '364 Patent at cls. 76, 89.)  This fact conclusively establishes that the
    claims fundamentally do not require a computer in the first place, and thus the references to
23  computers do not meaningfully limit the claims.  *See CyberSource*, 654 F.3d at 1373.  Again, the
    Supreme Court and Federal Circuit have consistently held that using computers to do "'more
24  quickly'" tasks that could otherwise be performed by humans (albeit slowly or with more effort)
    is not enough.  *Bancorp*, 687 F.3d at 1278 (citation omitted); *see also Alice*, 134 S. Ct. at 2359
25  (claims ineligible despite requiring "'simultaneous[ly]'" sent instructions, which could not be
    done absent computer (citation omitted)); *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)
26  (computer-implemented claims not eligible where functions can also be performed "mentally"
    "without a computer").

27

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

1   logic, or programming algorithms that could provide the missing "inventive" elements.  Just as in

2   *Ultramercial*, *buySAFE*, *Bancorp*, and *Dealertrack*, Telebuyer's patents "'do[] not specify how

3   the computer hardware and database are specially programmed to perform the steps claimed.'"

4   *Dealertrack*, 674 F.3d at 1333 (citation omitted).  Telebuyer's claims are drafted in purely func-

5   tional language that expresses the naked aspiration to use conventional video-telephones, dial-up

6   telephone lines, and computer hardware to facilitate face-to-face commercial communications,

7   relying instead on the public to create—*i.e.*, invent—the necessary algorithms and other special-

8   ized programming to achieve Telebuyer's "groundbreaking" and "revolutionary" results.  There

9   are, of course, numerous ways to do so, including the ways actually invented by the extraordi-

10   nary efforts of thousands of engineers working hard at America's most innovative technology

11   companies, both big and small.  Those are real inventions.  Telebuyer's vacuous patents are not.

### 4.   The Miscellany Of Other Gratuitous Limitations Are Not Inventive.

14       Nor are the other limitations remotely inventive.  It makes no difference, for example,

15   that each of Telebuyer's claims recites using visual communications—"dynamic" video, "high

16   resolution freeze frame data," or otherwise (*e.g.*, '894 Patent at cl. 185)—just as it was not

17   enough to limit the abstract hedging principle in *Bilski* to the energy markets (561 U.S. at 612),

18   or to limit the abstract clearinghouse concept in *Dealertrack* to facilitating auto loan applications

19   (674 F.3d at 1334).  As the Federal Circuit explained in *Dealertrack*, "[t]he notion of using a

20   clearinghouse generally and using a clearinghouse specifically to apply for car loans, like the re-

21   lationship between hedging and hedging in the energy market in [*Bilski*], is of no consequence

22   without more." *Id.*  Those cases would not have been decided differently if the claims were lim-

23   ited to using *visual communications* to facilitate hedging transactions or auto loans, respectively.

24   And the same would have been true for the intermediated settlement method found wanting in

25   *Alice*.  Visual communication capability is, therefore, nothing more than a technological field of

26   use limitation that "is of no consequence." *Id.  See also Accenture*, 728 F.3d at 1339 (claims in-

27   eligible despite requiring that the "client component displays the determined task"); *Planet Bin-*

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR                                    - 17 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

1    *go, LLC v. VKGS, LLC*, 961 F. Supp. 2d 840, 856 (W.D. Mich. 2013) (dependent claims specify-

2    ing that "input and output terminal includes a video screen" are not meaningfully different),

3    *aff'd*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014) ("we agree with the district court that there is no

4    meaningful distinction between the method and system claims or between the independent and

5    dependent claims").

6         Nor does it matter that the claims recite collecting and providing various data, such as

7    billing data, video data, data about areas of interest, or transaction data (*see*, *e.g.*, '894 Patent at

8    cl. 1, 185; '509 Patent at cl. 35) because mere "data-gathering" steps have never been sufficient

9    to confer patent-eligibility.  As the Federal Circuit explained in *Ultramercial*, "the steps of con-

10   sulting and updating an activity log represent insignificant 'data-gathering steps,' and thus add

11   nothing of practical significance to the underlying abstract idea."  772 F.3d at 716 (internal cita-

12   tion omitted).  And as the Federal Circuit explained in *CyberSource*, "mere 'data-gathering

13   steps'" to collect information about consumers' prior credit card usage to assess whether subse-

14   quent transactions are valid did not make the claims patent eligible."  654 F.3d at 1370 (brackets

15   and citation omitted); *see also Mayo*, 132 S. Ct. at 1298.

16        And finally, gratuitous steps like receiving video from vendors ('508 Patent at cl. 85);

17   connecting buyers and sellers based on areas of interest, conveying offers, and facilitating post-

18   transaction communications (*e.g.*, '509 Patent at cl. 1); assigning priority designations or ratings

19   to vendors ('509 Patent at cl. 74, 85; '364 Patent at cl. 47); using live operators to facilitate

20   transactions ('984 Patent at cl. 157); or providing limited-time offers ('796 Patent at cl. 70) are

21   all conventional or pre-computer-era (if not ancient) activities used by anyone facilitating com-

22   mercial communications.  None is inventive.  *See*, *e.g.*, *Alice*, 134 S. Ct. at 2357-59; *Mayo*, 132

23   S. Ct. at 1294, 1298-1300.

24              **5.     The Dependent Claims Add Nothing Inventive.**

25        Likewise, none of the 15 asserted dependent claims makes a difference.  At most, they

26   add only more extra-solution activity, field of use limitations, and conventional computing func-

27   tionality—which does not meaningfully confine the abstract commerce-facilitation concept, and

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR                    - 18 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

1   therefore does not render the claims patent eligible.   Some dependent claims—the Group A

2   claims—simply add a step for collecting buyers' reactions to offers (*see supra* at 8), which is an-

3   other data-gathering step that does not confer patent-eligibility.   *See Ultramercial*, 772 F.3d at

4   716.   The rest of the dependent claims—the Group B Claims—simply add other basic computer

5   features (such as using a mouse or email), extra-solution activity, or conventional steps (such as

6   providing limited-time offerings and targeting buyers based on past behavior).   (*See supra* at 8-

7   9.)   Such routine and insignificant additions do not remotely satisfy § 101.   *See Alice*, 134 S. Ct.

8   at 2359-60; *Content Extraction*, 2014 WL 7272219, at *4; *Ultramercial*, 772 F.3d at 715-16.

9

10                     **6.      The Claims Fail The "Machine-Or-
                               Transformation" Test.**

11          Not surprisingly, Telebuyer's claims also fail the "machine-or-transformation test,"

12   which, although not the "sole test," has been described by the Supreme Court as a "useful clue"

13   to patent-eligibility.   *Bilski*, 561 U.S. at 603; *Ultramercial*, 772 F.3d at 716.   Telebuyer's claims

14   are not tied to any "particular machine."   *Ultramercial*, 772 F.3d at 716-17.   Telebuyer's claims

15   are tied solely to generic computers, which are not "particular machines" without specialized

16   programming.   (*Supra* at 14-17.)   Although specialized programming could potentially transform

17   generic computers into something "particular," once again, there is no such specialized pro-

18   gramming here.   As for the "transformation of a particular article into a different state or thing,"

19   *CyberSource*, 654 F.3d at 1369 (quotation and citation omitted), even Telebuyer will not try to

20   argue that.   Even complex "manipulations of 'public or private legal obligations or relationships,

21   business risks, or other such abstractions cannot meet the [transformation] test because they are

22   not physical objects or substances, and they are not representative of physical objects or sub-

23   stances.'"   *Ultramercial*, 772 F.3d at 717 (quotation omitted).   That Telebuyer's claims fail the

24   machine-or-transformation test is itself compelling evidence that they are invalid under § 101 as

25   a matter of law.

26

27

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR                          - 19 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

1

**CONCLUSION**

2     Monopolies that remove vast swaths of human activity from the People without any con-

3 tribution to the public weal antedate the birth of our Republic, when the Crown bestowed on fa-

4 vored subjects the exclusive right to conduct some of the most basic aspects of colonial com-

5 merce.  Our Founders famously chafed against such abuses, which is why they expressly condi-

6 tioned Congress's power to grant monopolies on whether they serve an express public purpose—

7 the promotion of science and the useful arts.  Indeed, so bitter was the taste of monopolies

8 abused by the Crown, that even as late as 1813, Thomas Jefferson, author of the 1793 patent act

9 and prominent inventor in his own right, could caution that only significant contributions to the

10 public store of knowledge are worth the "public embarrassment" of a patent.  *Graham v. John*

11 *Deere Co.*, 383 U.S. 1, 8-10 & n.2 (1966) (discussing Jefferson correspondence).[9]

12     The Telebuyer patents are extreme examples of how far our patent system can drift from

13 its Constitutional moorings.  Those patents, which contribute nothing to the advancement of sci-

14 ence or the useful arts, claim to own some of the most basic aspects of American commerce,

15 however achieved, including by some of the most advanced and innovative technologies the

16 world has known.  Nothing in our nation's patent system, especially as enshrined in our Consti-

17 tution, should permit such a perverse result.

18     For the foregoing reasons, Amazon respectfully requests that the Court grant its Motion

19 for Summary Judgment of Invalidity under 35 U.S.C. §§ 112 and 101.

20

21     [9] *See also Motion Picture Co. v. Universal Film Co.*, 243 U.S. 502, 510-11 (1917) ("Since

22 *Pennock v. Dialogue*, 2 Pet. 1, was decided in 1829 this court has consistently held that the pri-
mary purpose of our patent laws is not the creation of private fortunes for the owners of patents

23 but is 'to promote the progress of science and useful arts' (Constitution, Art. I, § 8), an object
and purpose authoritatively expressed by Mr. Justice Story, in that decision, saying, 'While one

24 great object [of our patent laws] was, by holding out a reasonable reward to inventors, and giving
them an exclusive right to their inventions for a limited period, to stimulate the efforts of genius;

25 the main object was to promote the progress of science and useful arts.' . . .  Thirty years later
this court, returning to the subject, in *Kendall v. Winsor*, 21 How. 322, again pointedly and sig-

26 nificantly says:  'It is undeniably true, that the limited and temporary monopoly granted to inven-
tors was never designed for their exclusive profit or advantage; the benefit to the public or com-

27 munity at large was another and doubtless the primary object in granting and securing that mo-
nopoly.'").

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

1     February 17, 2015                    Respectfully submitted,

2                                             FENWICK & WEST LLP

3

4                                             By: *s/ Brian D. Buckley*

                                               Brian D. Buckley, WSBA No. 26423

5                                                  Ewa M. Davison, WSBA No. 39524

                                                 1191 Second Avenue, 10th Floor

6                                                  Seattle, Washington 98101

                                                 Phone:    (206) 389-4510

7                                                  Fax:       (206) 389-4511

                                                 Email:      bbuckley@fenwick.com

8                                                                       edavison@fenwick.com

9

10                                                  Saina S. Shamilov (*pro hac vice*)

                                                 J. David Hadden (*pro hac vice*)

11                                                  801 California Street

                                                 Mountain View, California 94041

12                                                  Telephone: (650) 988-8500

                                                 Facsimile: (650) 935-5200

13                                                  Email:      sshamilov@fenwick.com

14                                                                        dhadden@fenwick.com

15           *Of Counsel:*                              Counsel for Defendants

                                                   AMAZON.COM, INC., AMAZON WEB

16     By: *s/ Richard G. Frenkel*                  SERVICES LLC, and VADATA, INC.

                     Matthew J. Moore (*pro hac vice*)

17                      matthew.moore@lw.com

                     Gregory G. Garre (*pro hac vice*)

18                      gregory.garre@lw.com

                     Gabriel K. Bell (*pro hac vice*)

19                      gabriel.bell@lw.com

                     LATHAM & WATKINS LLP

20                      555 Eleventh Street, NW, Suite 1000

                     Washington, D.C.  20004-1304

21                      Telephone:  (202) 637-2200

                     Facsimile:  (202) 637-2201

22

23                      Douglas E. Lumish (*pro hac vice*)

                     doug.lumish@lw.com

24                      Richard G. Frenkel (*pro hac vice*)

                     rick.frenkel@lw.com

25                      Gabriel S. Gross (*pro hac vice*)

                     gabe.gross@lw.com

26                      Patricia Young (*pro hac vice*)

                     patricia.young@lw.com

27

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR        - 21 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

1

Eugene Chiu (*pro hac vice*)
eugene.chiu@lw.com
2
LATHAM & WATKINS LLP
3
140 Scott Drive
Menlo Park, California  94025-1008
4
Telephone: (650) 328-4600
Facsimile:  (650) 463-2600
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
Case No. 2:13-cv-01677-BJR                    - 22 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511

**CERTIFICATE OF SERVICE**

I, Richard G. Frenkel, hereby certify that on February 17, 2015, I caused the foregoing **MOTION FOR SUMMARY JUDGMENT OF INVALIDITY** to be served on the following parties as indicated below:

| | |
|---|---|
| **Jeremy E. Roller**<br>**Diana S. Breaux**<br>YARMUTH WILSDON PLLC<br>818 Stewart Street, Suite 1400<br>Seattle, WA  98101<br><br>*Attorneys for Plaintiff Telebuyer LLC* | [  ]  By United States Mail<br>[  ]  By Legal Messenger<br>**[X]  By Electronic CM/ECF**<br>[  ]  By Overnight Express Mail<br>[  ]  By Facsimile<br>[  ]  By Email [by agreement of counsel]<br>       jroller@yarmuth.com<br>       dbreaux@yarmuth.com |
| **Brian M. Berliner**<br>**Mark Alan Samuels**<br>**Xin-Yi Zhou**<br>O'MELVENY & MYERS LLP<br>400 S. Hope Street, Suite 1050<br>Los Angeles, CA  90071-2899<br><br>*Attorneys for Plaintiff Telebuyer LLC* | [  ]  By United States Mail<br>[  ]  By Legal Messenger<br>**[X]  By Electronic CM/ECF**<br>[  ]  By Overnight Express Mail<br>[  ]  By Facsimile<br>[  ]  By Email [by agreement of counsel]<br>       bberliner@omm.com<br>       msamuels@omm.com<br>       vzhou@omm.com |
| **Marc Pensabene**<br>O'MELVENY & MYERS LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY  10036<br><br>*Attorneys for Plaintiff Telebuyer LLC* | [  ]  By United States Mail<br>[  ]  By Legal Messenger<br>**[X]  By Electronic CM/ECF**<br>[  ]  By Overnight Express Mail<br>[  ]  By Facsimile<br>[  ]  By Email [by agreement of counsel]<br>       mpensabene@omm.com |
| **Susan van Keulen**<br>**Jonathan Crawford**<br>O'MELVENY & MYERS LLP<br>2765 Sand Hill Road<br>Menlo Park, CA  94025<br><br>*Attorneys for Plaintiff Telebuyer LLC* | [  ]  By United States Mail<br>[  ]  By Legal Messenger<br>**[X]  By Electronic CM/ECF**<br>[  ]  By Overnight Express Mail<br>[  ]  By Facsimile<br>[  ]  By Email [by agreement of counsel]<br>       svankeulen@omm.com<br>       jcrawford@omm.com |

February 17, 2015                    By: _s/ Richard G. Frenkel_____
                                         Richard G. Frenkel of
                                         LATHAM & WATKINS LLP

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
TELEPHONE  206.389.4510
FACSIMILE   206.389.4511