1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TELEBUYER, LLC,

          Plaintiff and
          Counterdefendant,

     v.

AMAZON.COM, INC., *et al.,*

          Defendants and
          Counterclaimants.

Case No. 2:13-cv-01677-BJR

**PLAINTIFF TELEBUYER, LLC'S
OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY**

NOTED ON MOTION CALENDAR:
MAY 4, 2015

ORAL ARGUMENT REQUESTED



# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................... 1

II.    FACTUAL BACKGROUND .................................................................................. 3

III.   AMAZON'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED ........ 6

     A.     Amazon Fails to Meet Its High Burden of Proving Invalidity Under § 101 .......... 6

         1.     The *Alice* Test, as Articulated in *DDR*, Protects Technological Solutions to Computer-Based Problems .................................... 6

         2.     Amazon Ignores Most Claims and Misrepresents the Language of the Claims It Purports to Address ................................ 8

         3.     Amazon Fails to Establish That Any Telebuyer Claim Is "Directed To" an Abstract Idea Under the First *Alice* Step..................................... 10

            a.     Amazon's Characterization of the Abstract Idea "Implicated by" the Claims Is Legally Insufficient and Factually Incorrect .................................... 10

            b.     The Claims Do Not Preempt Amazon's Alleged Abstract Idea, Confirming That They Are Not "Directed to" That Idea .................................... 12

         4.     Amazon Fails to Establish That Telebuyer's Claims Lack an Inventive Concept Under the Second *Alice* Step .................................... 14

            a.     Amazon Fails to Prove That the Actual Telebuyer Claim Limitations, Individually and as an Ordered Combination, Are Conventional .................................... 14

            b.     The Telebuyer Claims Recite Limitations That, Taken Individually or as an Ordered Combination, Are Inventive ........ 17

         5.     The "Machine-or-Transformation Test" Is Inapplicable ........................ 21

         6.     The Absence of Programming or Algorithms Is Irrelevant .................... 22

     B.     Amazon's Motion for Invalidity Based on "Functional Claiming" Should Be Denied as Long-Overruled by Statute ............................................................ 23

IV.   CONCLUSION ................................................................................................... 24

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OF INVALIDITY  -  i
NO. 2:13-cv-01677-BJR

YARMUTH  WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Accenture Global Serv. v. Guidewire Software, Inc.,*
   728 F.3d 1336 (Fed. Cir. 2013)............................................................... 13

*Alice Corp. Pty Ltd. v. CLS Bank Int'l,*
   134 S. Ct. 2347 (2014).................................... 1, 2, 6, 7, 8, 10, 11, 12, 13, 14, 15, 21

*Ameranth v. Genesis Gaming Solutions,*
   SACV 11-00189 AG, Dkt. No. 288 (C.D. Cal. Jan. 2, 2015)............................ 7, 11

*Ameritox, Ltd. v. Millennium Health, LLC,*
   2015 WL 728501 (W.D. Wis. Feb. 19, 2015)............................................... 7, 17

*Bancorp Servs., LLC v. Sun Life Assurance. Co.,*
   687 F.3d 1266 (Fed. Cir. 2012)............................................................... 13

*Bilski v. Kappos,*
   561 U.S. 593 (2010)................................................... 12, 21, 22, 23, 24

*buySafe, Inc. v. Google, Inc.,*
   765 F.3d 1350 (Fed. Cir. 2014)............................................................... 15

*Cal. Inst. of Tech. v. Hughes Communs., Inc.,*
   2014 WL 5661290 (C.D. Cal. Nov. 3, 2014)................................................ 14

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co., L.P.,*
   2014 WL 3542055 (D. Del. July 16, 2014) .................................................. 7

*DDR Holdings, LLC v. Hotels.com, LP,*
   773 F.3d 1245 (Fed. Cir. 2014)............................. 7, 8, 11, 12, 13, 14, 16, 17, 19, 22, 23, 24

*DealerTrack, Inc. v. Huber,*
   674 F.3d 1315 (Fed. Cir. 2012)............................................................... 13, 23

*Diamond v. Diehr,*
   450 U.S. 175 (1981)......................................................................... 15, 16

*Helio Software, LLC v. SpectorSoft Corp.,*
   2014 WL 4796111 (D. Del. Sept. 18, 2014) ................................................ 12

*Mayo Collaborative Serv. v. Prometheus Labs., Inc.,*
   132 S. Ct. 1289 (2012)....................................................................... 1

*Microsoft Corp. v. i4i Ltd. P'ship,*
   131 S. Ct. 2238 (2011)....................................................................... 7

*Noah Sys. v. Intuit Inc.,*
   675 F.3d 1302 (Fed. Cir. 2012)............................................................... 22, 23

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005)............................................................... 23

*Shelcore, Inc. v. Durham Indus., Inc.,*
   745 F.2d 621 (Fed. Cir. 1984).............................................................. 8



YARMUTH WILSON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Smartflash LLC v. Apple Inc.*,
   2015 WL 661174 (E.D. Tex. Feb. 13, 2015) ........................................................ 12

*StoneEagle Servs., Inc. v. Pay-Plus Solutions, Inc.*,
   2015 WL 518852 (M.D. Fla. Feb. 9, 2015) ..................................................... 8, 10

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   2015 WL 269116 (N.D. Cal. Jan. 20, 2015) ...................................................... 7

*Tenon & Groove, LLC v. Plusgrade S.E.C.*,
   2015 WL 1133213 (D. Del. Mar. 11, 2015) ...................................................... 7

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) .................................................... 13, 15, 23

**Statutes**

35 U.S.C. § 100(b) ............................................................................... 22, 24

35 U.S.C. § 101 ........................................... 2, 6, 7, 10, 11, 12, 13, 14, 16, 21, 23

35 U.S.C. § 102 ............................................................................... 14

35 U.S.C. § 103 ............................................................................... 14

35 U.S.C. § 112 ............................................................................... 23

35 U.S.C. § 282 ............................................................................... 7

YARMUTH  WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   ## I.   <u>INTRODUCTION</u>

2       When Ron Katz developed his inventions in 1993—providing online retailers with an un-

3   conventional new tool for identifying and targeting consumers most likely to be interested in

4   their products—e-commerce was still in its infancy.  Buyer-feedback and recommendation tech-

5   nology, which had no precedent in the brick-and-mortar world, presented a novel solution to the

6   problem of information clutter and confusion, fundamentally altering the shopping experience in

7   ways that today have become commonplace.  Amazon, which touts itself as a recommendation-

8   technology leader, did not even exist at the time.

9       In seeking summary judgment on the invalidity of Telebuyer's asserted claims, Amazon

10  forgets the bewilderment and inefficiency that impeded e-commerce 22 years ago and, in its at-

11  tempt to minimize the inventiveness of Telebuyer's breakthrough, Amazon proposes to eliminate

12  computer-implemented processes as a category of patentable inventions altogether.  Amazon's

13  motion is wrong on the law and bad for innovation.  It misapplies the Supreme Court's two-step

14  *Alice* test for patent-eligible subject matter and should be denied.

15      First, of the 32 claims at issue, Amazon cherry-picks just three, conveniently tossing

16  aside the rest as "comparable" and "adding nothing."  Dkt. No. 202 at 8.  Next, it rewrites these

17  self-selected claims to serve its own purposes, ignoring key limitations.  Amazon then reduces

18  the claims to caricatures of the technology they actually cover, mischaracterizing them as noth-

19  ing more than "connecting buyers and sellers and facilitating face-to-face commerce."  *Id*. at 11.

20  Finally, Amazon ignores the claims as an ordered combination of elements conceived in 1993,

21  asserting that because the individual elements, each in isolation, use "generic computing compo-

22  nents" without describing "specialized software, system logic, or programming algorithms,"

23  none is entitled to "inventive weight."  *Id*. at 14.  At every step, Amazon misapplies the law.

24      As the Supreme Court recognized, all inventions, at some level, can be viewed as em-

25  bodying, using, applying or, as Amazon puts it, "implicating" (*id*. at 11) an abstract idea.  *Alice*

26  *Corp. Pty Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (citing *Mayo Collaborative Serv.*

27  *v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012)).  But that is not enough to raise an issue under

YARMUTH WILSON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

35 U.S.C. § 101—if it were, such a rule would "swallow all of patent law." *Id.* Rather, the first step in a proper *Alice* analysis looks at whether a challenged claim is "directed to" an abstract idea—*i.e.*, whether it covers the idea itself. *Id.* at 2355. The *Alice* court characterized "the concern that drives this exclusionary principle" as being "one of pre-emption." *Id.* at 2354.

Amazon makes no attempt to show how Telebuyer's inventions could possibly preempt the abstract idea Amazon posits, and for good reason. The actual language of Telebuyer's claims—not Amazon's cherry-picked, rewritten, stripped-down, caricatured versions—makes plain that the claims are directed to particular solutions unique to e-commerce that have no application in the brick-and-mortar world. They do not remotely preempt "connecting buyers and sellers and facilitating face-to-face commerce" (Dkt. No. 202 at 11) or, more broadly, "connecting buyers and sellers to facilitate commerce" (*id.* at 13), as Amazon inconsistently characterizes it. Nor do Telebuyer's claims preempt "connecting buyers and sellers" via *electronic* commerce, either. Rather, the claims include numerous meaningful limitations, from advanced video technologies to data-driven techniques for intelligently identifying buyer interest, that exclude from the patents' scope large classes of electronic commerce systems.

In the second step of the *Alice* test, Amazon again veers from the law. Any computer-implemented invention will necessarily comprise seemingly generic computer operations, like storing and processing data—that is, after all, what computers do. Any single computer operation, wrenched from its context and viewed in isolation, may therefore appear uninventive. But in deciding whether a claim contains "an inventive concept," the Court is required to consider all of the claim's limitations, not just individually but also "as an ordered combination." *Alice*, 134 S. Ct. at 2355. Amazon does not address any combination, much less carry its summary judgment burden of demonstrating that *as of 1993*—a time when e-commerce itself was a novelty—the "ordered combination" of steps in each asserted claim lacked any "inventive concept" or "additional features" beyond an abstract concept itself. *See id.* at 2357. Even to the extent Amazon purports to address its stripped-down, rewritten version of the claim limitations in isolation, it does not submit *any* evidence to show that they were conventional, resorting instead to hand

waving and improperly attempting to shift the burden to Telebuyer to prove otherwise. Notwithstanding Amazon's failure of proof, Telebuyer will show that each asserted claim includes elements and element combinations that were not at all conventional in 1993. At the very least, there are material issues of fact that cannot be resolved on summary judgment.

Amazon's alternative motion for summary judgment of invalidity on grounds of so-called "functional claiming" fares no better. Amazon has done nothing more than incorporate by reference its arguments in pending *Markman* briefing, and Telebuyer hereby does the same.[1] Amazon's argument turns entirely on what it calls a "150 year-old rule" against so-called "functional claiming," but this purported rule was explicitly superseded by statute in 1952. No court since then has applied Amazon's purported rule, and this Court should not, either. Moreover, in its *Markman* briefing, Telebuyer has submitted voluminous evidence demonstrating that the disputed claim terms are understood by ordinarily skilled artisans to refer to known classes of structure—*i.e.*, they are not "purely functional," as Amazon alleges. To accept Amazon's argument, the Court would have to not only make new law but also ignore Telebuyer's evidence rather than accept it as true, as the burden of proof on summary judgment requires.

## II.   FACTUAL BACKGROUND

In 1993, Ron Katz developed the Telebuyer inventions to solve specific, technological problems that arose with the emergence of e-commerce technology. In the early 1990s, merchants had begun experimenting with different forms of electronic communication to facilitate commerce and, by 1993, several technological problems had emerged in this nascent industry. With an exponential increase in the amount of information available through e-commerce systems, consumers struggled to identify the right vendor or product among the vast sea of options. As Mr. Katz recognized, providing all information to a buyer created an "information overload" problem, which was rooted in the use of computers for facilitating commerce. *See* '894 Patent at

---

[1] Telebuyer incorporates by reference its *Markman* briefs (Dkt. Nos. 152 and 161) and technology tutorial presentation (Dkt. No. 194-1 and Ex. 1). Unless specified otherwise, all exhibits referenced in this brief are attached to the accompanying Declaration of Brian M. Berliner In Support of Telebuyer's Opposition to Defendants' Motion for Summary Judgment of Invalidity.



1   3:63-65, 10:42-46, 13:32-35, 18:22-24, 20:38-40[2]; Ex. 2 at 1-3; Ex. 3 at 49.

2        The conventional approach for presenting information, adopted by the CompuServe®

3   Electronic Mall[3] and other computer-based e-commerce systems at the time, was to provide a set

4   of catalog menus and allow buyers to find their own way through a maze of available vendors

5   and products.  *See* Ex. 4 at 2-5.  A buyer would first navigate lists of vendors (*id.* at 2), then nav-

6   igate the selected vendor's product lists (*id.* at 9-10), hoping to get lucky and stumble across a

7   desired item.  This approach was cumbersome and inefficient, and provided limited, if any, abil-

8   ity to filter through available data or to compare products from multiple vendors.  *See id.* at 2-12.

9        Cable television providers, including Telaction®[4], had also begun experimenting with e-

10  commerce technologies.  *See* Ex. 5 at 1-2.  Telaction® was an experimental interactive cable tel-

11  evision shopping service that enabled a consumer to tune her TV to a specific channel and then,

12  by calling a specified telephone number, use her telephone keypad to browse catalogs that ap-

13  peared on the TV screen to select and purchase products.  *See id.* at 3; Ex. 6 at 2-5.  While

14  Telaction® included products from different vendors, it suffered the same flaw as the computer-

15  based systems—there was no easy way for a buyer to filter through large amounts of data to find

16  the right vendor, or for vendors to sift through all viewers and target specific buyers.  *See* Ex. 6

17  at 4-6.  Like other experimental cable television-based systems, Telaction® never gained com-

18  mercial acceptance and was discontinued after brief testing in a limited market.  *See* Ex. 7.

19       Another problem hindering early e-commerce efforts was that buyers could not easily

20  compare multiple product offerings, especially when several vendors offered products with simi-

21  lar descriptions.  Conventional e-commerce systems made limited use of video images, if at all,

22  and generally did not include images in search results.  *See* Ex. 4 at 9; Ex. 6 at 7.  Although buy-

23  ers, after navigating a series of menus, might have been able to request a product image, such

24  low quality, static, non-interactive images were of limited utility in comparing products.

25

26  _____

[2] The patents-in-suit are attached to Amazon's opening brief as Exs. 1-7 of Dkt. No. 203-1.

[3] CompuServe® Electronic Mall is cited by Amazon as prior art to all of the asserted claims.  *See* Ex. 8.

27  [4] Telaction® is also cited by Amazon as prior art to all of the asserted claims.  See Ex. 8.

1    The Telebuyer inventions solve these specific technological problems, including the in-

2    formation overload that plagued existing e-commerce systems.  Mr. Katz's inventions use a traf-

3    fic control system that can access not only data about the products offered for sale, but also other

4    information, such as buyers' interactions and areas of interests.  And, rather than adopt the con-

5    ventional, text-based, menu-driven approach requiring the buyer to sort through massive vol-

6    umes of product data, Mr. Katz's system uses various types of stored data to provide e-

7    commerce buyers with the most relevant product information and enable e-commerce vendors to

8    target those buyers most likely to be interested in their products.

9    This inventive aspect of the Telebuyer inventions is reflected in all of the asserted claims,

10   as highlighted in Exhibit 9.  The claims recite several different methods for selectively providing

11   proposed product data to customers, and all relieve the user of the laborious browsing process—

12   *i.e.*, avoiding the information overload then plaguing existing e-commerce systems.  Many

13   claims, for example, recite selectively providing product data, including video data, to buyers

14   based on data reflecting the buyer's area of interest.  *See, e.g.*, '509 Patent, claim 35.  Certain

15   claims further refine the data sent to the buyer by providing the data according to a priority sta-

16   tus.  *See, e.g.*, '509 Patent, claim 36.  And other claims recite providing product data based on

17   requests previously received from a user.  *See, e.g.*, '364 Patent, claim 89.  The claims also de-

18   fine different computer processes for vendors to target particular buyers.  For example, some

19   claims recite notifying buyers of available merchandise according to expressed areas of interest,

20   but in a rotational or random order of operation, thereby allowing fairer access to special offers.

21   *See, e.g.*, '509 Patent, claim 85.  And other claims recite storing buyer reactions to offers, there-

22   by creating another mechanism for prioritizing product offers.  *See, e.g.*, '894 Patent, claim 48.

23   The inventiveness of the Telebuyer inventions can also be seen in their advanced video

24   capabilities, a technological development that allows buyers to more easily review and compare

25   products, including products from different vendors.  *See* Ex. 10.  For example, the claims recite

26   delivery of "selectively obtain[ed]" video data (*i.e.*, video data chosen by the traffic control sys-

27

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OF INVALIDITY  -  5
NO. 2:13-cv-01677-BJR

YARMUTH  WILSON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

tem)[5] to each buyer based on that buyer's request data, and many claims recite the provision of high-resolution images or dynamic video (*i.e.*, motion video, such as movies). *See, e.g.*, '509 Patent, claim 57. Some claims further recite providing a capability for buyers to manipulate (*e.g.*, zoom in or change the viewing angle) and share product videos. *See, e.g.*, '509 Patent, claim 74. These advanced video capabilities, in combination with the other claim elements, address shortcomings of then-existing e-commerce systems and allow buyers to conduct a more meaningful examination and comparison of products than would otherwise be possible.

The benefits achieved by the Telebuyer inventions were not previously realized using the e-commerce systems existing at the time, and they certainly were not possible or even applicable in the world of traditional, non-electronic commerce. As discussed in more detail below, the asserted claims provide unconventional technical solutions to problems rooted in the use of computers to facilitate commerce, and represent an important breakthrough that enabled the kinds of e-commerce services consumers take for granted today.

## III.   AMAZON'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

### A.   Amazon Fails to Meet Its High Burden of Proving Invalidity Under § 101

#### 1.   The *Alice* Test, as Articulated in *DDR*, Protects Technological Solutions to Computer-Based Problems

The Supreme Court has established a two-step test for evaluating patent eligibility under § 101, neither of which Amazon has satisfied. First, to obtain a finding of invalidity, the defendant must prove that the challenged claims "are directed to a patent-ineligible abstract idea." *Alice*, 134 S. Ct. at 2355. Second, if any claim is directed to an abstract idea, the defendant must also show that the challenged claim elements—"both individually and as an ordered combination"—do not include an "inventive concept" that would "ensure that the claim in practice amounts to 'significantly more' than a patent on an ineligible concept." *Id.* To prevail, Amazon must prove that each asserted claim fails both steps of the *Alice* test.[6]

---

[5] The parties agree that "selectively obtain" and "selectively display[]" requires the traffic control system to choose a subset of data from a group of available data. *See* Dkt. No. 132 at 2.

[6] Because Amazon has offered no evidence in support of its motion, it makes no difference in this case whether the



1   The Federal Circuit's decision late last year in *DDR Holdings, LLC v. Hotels.com, LP*,

2   773 F.3d 1245 (Fed. Cir. 2014), provides the most relevant guidance on the proper application of

3   the *Alice* test here.  In *DDR*, the challenged claims recited methods for creating web pages by

4   combining product information from a third-party merchant website with a host website to cause

5   the two pages to have the same "look and feel." *Id.* at 1248-49; Ex. 11, claim 1.

6   Applying the first step of the *Alice* test, the Federal Circuit noted that the claims at issue

7   did not cover a "plainly identifiable" abstract idea, *id.* at 1256, but instead "address a business

8   challenge … particular to the Internet" in the retention of website visitors.  *Id*. at 1257.  The

9   court found that the challenged claims were therefore not directed to an abstract "fundamental

10  economic or longstanding commercial practice."  *Id*.  Instead, DDR's claims—like Telebuyer's

11  claims here—were found to address a technological problem "that does not arise in the 'brick

12  and mortar' context." *Id.* at 1258.

13  Applying the second *Alice* step, the court found that DDR's claims—again, like

14  Telebuyer's—provide a technological solution that "is necessarily rooted in computer technology

15  in order to overcome a problem specifically arising in the realm of computer networks," and

16  through that solution, the claims added "significantly more" to any alleged abstract idea.  *Id*. at

17  1257-58.  Analyzing the "asserted claims … together as an ordered combination," the *DDR* court

18  noted that the claimed methods relating to composite websites do not simply apply a known

19  business practice to the Internet, but "override[] the routine and conventional sequence of

20  events" that normally occurs with known processes.  *Id.* at 1258-59.  Based on this analysis, the

21  court concluded that the asserted claims "do not attempt to preempt every application of the idea

22

23  Court holds Amazon to a "clear and convincing" evidence standard or a more relaxed preponderance standard.  Although the cases are not uniform, the better reasoned district court cases, following *Microsoft Corp. v. i4i Ltd.*

24  *P'ship*, 131 S. Ct. 2238 (2011), hold that the moving party's burden must be met by "clear and convincing evidence."  *See Ameranth v. Genesis Gaming Solutions*, SACV 11-00189 AG, Dkt. No. 288 at 11 (C.D. Cal. Jan. 2,

25  2015) (citing *Microsoft* and 35 U.S.C. § 282) (Ex. 29); *Ameritox, Ltd. v. Millennium Health, LLC*, 2015 WL 728501, \*24-27 (W.D. Wis. Feb. 19, 2015) (applying clear and convincing burden in § 101 analysis); *Synopsys, Inc. v. Men-*

26  *tor Graphics Corp.*, 2015 WL 269116, \*3 (N.D. Cal. Jan. 20, 2015) (same); *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co., L.P.*, 2014 WL 3542055 (D. Del. July 16, 2014) (same); *Tenon & Groove, LLC v. Plusgrade S.E.C.*,

27  2015 WL 1133213, \*3 (D. Del. Mar. 11, 2015) (same).

YARMUTH WILSON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   of increasing sales by making two web pages look the same" and thus are patent eligible. *Id.*[7]

2   Indeed, Amazon concedes the protections offered by *DDR*. While Amazon challenges

3   the applicability of *DDR* here (*see* Dkt. No. 202 at 15), Amazon boldly relied upon *DDR* in con-

4   current proceedings before the Patent Office. In rebutting § 101 rejections of its own claims on

5   e-commerce technology, Amazon applied *DDR*—in the same manner as Telebuyer does here—

6   to successfully convince the Patent Office that claims covering computer processes for "detect-

7   ing item relationships" are patent-eligible. *See* Ex. 13 at 10; Ex. 14 at 4-5; Ex. 15 at 1. Where a

8   litigant takes such drastically different positions, as Amazon has done here, the Court should, at a

9   minimum, subject those arguments to close scrutiny.

10          **2.      Amazon Ignores Most Claims and Misrepresents the Language of the**
11                  **Claims It Purports to Address**

12   Amazon shirks its burden on summary judgment to "submit evidence supporting a con-

13   clusion of invalidity of each claim the challenger seeks to destroy." *StoneEagle Servs., Inc. v.*

14   *Pay-Plus Solutions, Inc.*, 2015 WL 518852, *5 (M.D. Fla. Feb. 9, 2015) (citing *Shelcore, Inc. v.*

15   *Durham Indus., Inc.*, 745 F.2d 621, 625 (Fed. Cir. 1984)). Of the 32 asserted claims in this case,

16   Amazon fails to address the actual scope of any.

17          *First*, Amazon has unilaterally designated three independent claims as "representative"

18   without any serious attempt to show that the other asserted independent claims are "comparable,"

19   as it contends.[8] *See* Dkt. 202 at 7-8. They are not. The 13 independent claims Amazon ignores[9]

20   recite numerous elements and combinations not found in the three so-called "representative

21   claims." As just one example, claim 57 of the '509 Patent recites a step of "facilitating manipu-

22   lation by the buyers of the video images including stored dynamic video or stored high resolution

23   still image via a control device," a limitation not found in Amazon's "representative claims."

24   ───────────────

[7] Consistent with *DDR*, the Patent Office has explained that patent eligibility is established under the *Alice* test by
25   claims "[a]dding a specific limitation other than what is well-understood, routine and conventional in the field, or
adding unconventional steps that confine the claim to a particular useful application." Ex. 12 at 74624.
26   [8] Telebuyer offered to simplify briefing by limiting the present motion to just one of the asserted patents, but the
parties were unable to come to an agreement. *See* Ex. 16.
[9] The other asserted independent claims are: '894 Patent, claim 185; '508 Patent, claim 85; '509 Patent, claims 35,
27   53, 57, 74, 85; '796 Patent, claims 1, 24, 70; '272 Patent, claim 31; '364 Patent, claims 47, 76 (through claim 89).

YARMUTH WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1  This "facilitating manipulation" step contributes to a significant inventive concept, yet Amazon

2  provides no analysis of it.  Nor does Amazon provide any reason for disregarding the many other

3  differences between the ignored independent claims and the three Amazon has taken the liberty

4  of labeling "representative."  *See* Ex. 17.

5  **Second**, even within the three independent claims it purports to analyze, Amazon fails to

6  address the actual claim language.  Claim 1 of the '894 Patent, for example, encompasses nu-

7  merous elements that Amazon's recast, truncated version simply excises:

| Amazon's Version | '894 Patent, Claim 1 (Amazon's omissions italicized) |
|---|---|
| "receiving buyers' requests for a transaction in an area of interest" | receiving request data … ***entered by an interfaced*** buyer to indicate an area of interest … ***including an indication of a maximum amount offered by the interfaced buyer for select merchandise or service*** … |
| "storing data about the buyer's request" | storing ***at least a part of*** the request data from the interfaced buyer ***at the traffic control system and using at least a part of it to selectively obtain proposed data at least in part from the video storage device having stored video data relating to the different vendors and responsive to the interfaced buyer's request data***; … |
| "providing the buyer with a video relating to the request." | as part of said proposed data ***selectively*** displaying stored video data ***from said video storage device*** … |

15  Dkt. No. 202 at 7.  As the Court can see, Amazon omits multiple elements, including: (1) receiv-

16  ing an indication of the maximum amount offered by the buyer; (2) using a part of the stored re-

17  quest data to "selectively obtain" proposed data, including videos from a video storage device,

18  that may be of interest to the buyer; and (3) "selective displaying" video from the video storage

19  device.  These omitted elements, including the requirements that the data is "selectively" ob-

20  tained and displayed based on the buyer's interest, form an important part of Telebuyer's techno-

21  logical solution for the "information overload" problem.  Substituting its truncated claim lan-

22  guage for the actual claim language, Amazon argues that "storing data in a database is not in-

23  ventive" and "[v]isual communication capability … 'is of no consequence.'"  *Id.* at 14, 17.  This

24  is a sleight of hand.  As shown above, Amazon has failed to address the actual limitations of

25  claim 1, which cover significantly more than "data storage" and "visual communication."

26  **Third**, Amazon also rewrites the dependent claims.  It groups all 16 of them into two

27  general categories and summarily dismisses them all with the sweeping proclamation that they

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OF INVALIDITY - 9
NO. 2:13-cv-01677-BJR

YARMUTH WILSON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

1  add "nothing relevant to this motion."  Dkt. No. 202 at 8-9.  Amazon is wrong.  Dependent claim

2  47 of the '272 Patent, for example, recites "wherein access to the video data is provided accord-

3  ing to a priority status."  Ignoring the claim language, Amazon rewrites and mischaracterizes this

4  claim as "specifying details about the video communications" and then dismisses it without any

5  explanation, evidence, or analysis.  *Id.* at 9.  Similarly, dependent claim 89 of the '364 Patent

6  adds the step of sending an offer message to a selected group of buyers based on stored request

7  data of at least one buyer, a significant limitation that set Telebuyer's invention apart from con-

8  ventional e-commerce systems existing at the time of the invention.  Amazon also rewrites and

9  dismisses this claim as irrelevant without any evidence or analysis.  *Id.*

10  Exhibit 17 identifies exemplary elements from each of the asserted claims that Amazon

11  has failed to analyze.[10]  These claim limitations, as discussed in Section III.A.4.b below, add

12  "significantly more" to the claims under the second step of the *Alice* test.  Because Amazon fails

13  to address these limitations, it falls far short of establishing that all 32 asserted claims are di-

14  rected to non-patentable subject matter.  *See StoneEagle Servs.*, 2015 WL 518852 at *4-5 (deny-

15  ing § 101 motion because defendants "unilaterally designate[d] certain claims as 'representa-

16  tive'" and "fail[d] to meaningfully address the [remaining] claims").

### 3.  Amazon Fails to Establish That Any Telebuyer Claim Is "Directed To" an Abstract Idea Under the First *Alice* Step

18
19  Amazon fails the first step of the *Alice* test because it cannot establish that the challenged

20  claims are directed to an abstract idea.  Amazon's attempt to satisfy this threshold burden instead

21  relies on fictitious, attorney-rewritten, truncated versions of select claims.  Even on its own

22  terms, Amazon's analysis is legally flawed and factually wrong.

### a.  Amazon's Characterization of the Abstract Idea "Implicated by" the Claims Is Legally Insufficient and Factually Incorrect

24  Amazon's allegation that "Telebuyer's claims … *implicate* a fundamental economic

25  practice," even if it were true, is legally insufficient because it does not establish that the claims

---

[10] Even when Amazon purports to address a dependent claim, it has failed to address all claim limitations of its corresponding independent claim.  *See* Ex. 17.



1  are **directed to** an abstract idea.  *See* Dkt. No. 202 at 11 (emphasis added).  This is more than

2  mere semantics.  A claim that is "directed to" an abstract idea does much more than involve or

3  implicate that idea; it attempts to **exclude others** from practicing that idea—the judicial concern

4  at the heart of §101 jurisprudence.  As the Supreme Court observed in *Alice*, "an invention is not

5  rendered ineligible for patent simply because it **involves** an abstract concept."  *Alice*, 134 S. Ct.

6  at 2354 (emphasis added).  Because all inventions use or apply an abstract idea at some level,

7  *Alice* admonishes that courts must "tread carefully in construing this exclusionary principle lest it

8  swallow all of patent law."  *Id.*  Courts must therefore distinguish "between (1) a claim 'directed'

9  to an abstract idea … and (2) a patent not 'directed' to an abstract idea … but that nonetheless

10  can be said to 'embody, use, reflect, rest upon, or apply' an abstract idea."  *Ameranth*, SACV 11-

11  00189 AG at *7.  Amazon ignores this distinction.  Saying that claims "implicate a fundamental

12  economic practice"—a truism for every e-commerce invention—falls far short of raising any

13  §101 issue.  *See id.*  In fact, Telebuyer's asserted claims are not directed to an abstract idea be-

14  cause—as in *DDR* and similar cases—they define specific, non-abstract systems and processes

15  that differ from routine business practices.  *See DDR*, 773 F.3d at 1258.

16      Amazon's suggestion that Telebuyer's claims cover the practice of "connecting buyers

17  and sellers and facilitating face-to-face commerce" (Dkt. No. 202 at 11) is also factually wrong.

18  Even a cursory reading of the asserted claims reveals that they do not purport to cover the "ab-

19  stract idea" Amazon posits.  Rather, the specification makes clear that an important goal of the

20  inventions embodied in the asserted claims is to use stored video data to facilitate sales "**without**

21  any visual conferences between vendors and buyers."[11]  '894 at 19:4-8 (emphasis added).  All

22  asserted claims recite limitations relating to the provision of stored video data to prospective

23  buyers, a feature that goes far beyond "connecting buyers and sellers" that has no application to

24  _____

25  [11] Dependent claim 160 of the '984 Patent is the only asserted claim that requires a party to interact with an operator "via live video."  Amazon latches onto this limitation to support its position that the claims could be performed

26  without a computer.  But Amazon is mistaken.  Even that claim includes, through the independent claim from which it depends, a step of providing stored video to an interfaced buyer prior to initiating "live video" communication—a step that plainly requires a video storage device and a computer.  *See* '984 Patent, claim 157 ("providing … high

27  resolution video data and text data relating to the area of interest from a select vendor data site").



1    "face-to-face commerce."  *See, e.g.*, '894 Patent, claim 1 ("video storage device having stored

2    video data"); '509 Patent, claim 35 ("providing access by the buyers ... to a video memory").

3    And, certain claims explicitly recite a step of "subsequently interfacing the requesting party to

4    the central data system for further viewing of select video sales presentations," which confirms

5    that these claims do not require face-to-face communication.  '894 Patent, claim 185; *see also*

6    '509 Patent, claims 35, 53, 57, and 74.  Each one of these is an e-commerce innovation—a new

7    way of facilitating transactions with the use of centralized computers, video storage devices, and

8    databases.  Amazon's assertion that "[f]ace-to-face commerce is ... as old as humanity itself"

9    (Dkt. No. 202 at 12) could scarcely be more irrelevant to the § 101 analysis in this case.

      **b.   The Claims Do Not Preempt Amazon's Alleged Abstract Idea, Confirming That They Are Not "Directed to" That Idea**

12        Amazon does not even attempt to argue that the asserted claims preempt any fundamental

13   business practice, the concern at the heart of the *Alice* analysis.[12]  As the Supreme Court has re-

14   peatedly noted, "the concern that drives this exclusionary principle as one of pre-emption."  *Al-

15   ice*, 134 S. Ct. at 2354 (citing *Bilski v. Kappos*, 561 U.S. 593, 611-12 (2010)).  In determining

16   whether a claim is unpatentably abstract under § 101, courts will therefore assess whether the

17   claim broadly preempts a fundamental practice.  *See, e.g., DDR*, 773 F.3d at 1259 (affirming va-

18   lidity of claims that do not "preempt every application of the idea of increasing sales by making

19   two web pages look the same"); *Helio Software, LLC v. SpectorSoft Corp.*, 2014 WL 4796111,

20   *17 (D. Del. Sept. 18, 2014) (denying § 101 motion where claims do not preempt "fundamental

21   truths or fundamental principles"); *Smartflash LLC v. Apple Inc.*, 2015 WL 661174, *9 (E.D.

22   Tex. Feb. 13, 2015) (denying § 101 motion where claims do not "preempt[] all future inventions

23   related to exchanging access to data for payment on the Internet").

24        The reason Amazon does not even attempt to argue preemption is plain.  While all e-

---

[12] Just a few weeks before filing this motion, in remarkable contrast to its silence on that critical issue here, Amazon emphatically pointed to the question of preemption in successfully arguing for the patentability of its own claims before the Patent Office, correctly describing the first step of *Alice* as asking "whether the claims, if upheld, would preempt use of the approach in all fields and effectively grant a monopoly over the abstract idea."  Ex. 13 at 9.



1   commerce inventions, at some level, **relate to** facilitating transactions between buyers and

2   sellers, the asserted claims do not exclude others from performing the basic idea of "connecting

3   buyers and sellers."  Rather, like the claims affirmed in *DDR*, the asserted claims address chal-

4   lenges particular to computer-based systems and do not claim any "longstanding commercial

5   practice."  *DDR*, at 773 F.3d at 1257.  Indeed, the asserted claims recite specific computer opera-

6   tions that cannot be performed in the human mind or with pen and paper.  *See, e.g.*, '509 Patent,

7   claim 88 ("a control device … configured to enable buyers to manipulate the control device and

8   to capture at least one of the video images … and transmit a captured video image to another re-

9   mote terminal"); '894 Patent, claim 1 ("selectively obtain[ing] proposed data … from the video

10  storage device"); '364 Patent, claim 47 ("interfacing one or more buyers to a video memory un-

11  der control of the one or more multiple coordinated central control units").

12      Amazon attempts to analogize Telebuyer's claims to claims covering computer automa-

13  tion of well-established business practices that have been found invalid under § 101, such as us-

14  ing an intermediary to mitigate settlement risk (*Alice*), automating insurance claim processing

15  (*Accenture*), calculating the value of life insurance policies (*Bancorp*), processing credit applica-

16  tions (*DealerTrack*), and viewing advertisements as an exchange or currency (*Ultramercial*).

17  *See* Dkt. No. 201 at 11-12.  But there is no comparison.  The claims in each of those cases were

18  found to include only elements that perform a common business practice.  And in each case, the

19  court found that the claims preempted all computer applications of a fundamental practice in a

20  particular market.  *See Alice*, 134 S. Ct. at 2358 ("the pre-emption concern … undergirds our §

21  101 jurisprudence"); *Accenture Global Serv. v. Guidewire Software, Inc.,* 728 F.3d 1336, 1345

22  (Fed. Cir. 2013) (claims "preempt[ed] the abstract idea of system claim 1"); *Bancorp Servs., LLC

23  v. Sun Life Assurance. Co.*, 687 F.3d 1266, 1280 (Fed. Cir. 2012) (claim preempted a "mathe-

24  matical concept"); *DealerTrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (claims "di-

25  rected to an abstract idea preemptive of a fundamental concept or idea"); *Ultramercial, Inc. v.

26  Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (claims covered an abstract idea "devoid of a

27  concrete or tangible application").

The preemption concerns at the heart of those cases do not exist here: Even in the world of e-commerce, the asserted claims cover specific methods and systems not found in every computer system "connecting buyers and sellers," such as systems that apply only the menu-driven approach of e-commerce.  Amazon (or any other e-commerce vendor) could connect buyers and sellers without practicing the specific steps recited by each claim—without, for example, providing dynamic video, facilitating video manipulation and sharing, "using the area of interest stored for the buyers to selectively obtain proposed data," or "isolating certain other buyers based upon the prospective buyer's indicated area of interest."  *See, e.g.,* '509 Patent, claims 85 and 88; '796 Patent, claim 41.  Simply put, the asserted claims do not implicate the preemption concerns underlying *Alice* because they do not preempt all e-commerce or Amazon's posited abstract idea. Amazon has thus failed to demonstrate that any accused claim is directed to an abstract idea.

### 4.    Amazon Fails to Establish That Telebuyer's Claims Lack an Inventive Concept Under the Second *Alice* Step

Amazon also fails the second step of the *Alice* test because it cannot establish that the claim elements—both individually and as an ordered combination—lack any inventive concept and do not add "significantly more" than the idea of connecting vendors and buyers for commerce.  *See DDR*, 773 F.3d at 1255.  This is a factual inquiry requiring Amazon to demonstrate that, at the time of invention, all recited elements and element combinations were "routine, well-understood, or conventional" such that they amount to "a trivial appendix to the underlying abstract idea."  *Cal. Inst. of Tech. v. Hughes Communs., Inc.*, 2014 WL 5661290, *2 n.6 (C.D. Cal. Nov. 3, 2014).  It is insufficient to show merely that a concept was previously known, because questions of novelty and obviousness are not properly addressed under § 101, and are only addressed under §§ 102 and 103.  *See id.* at *2, *11 n.13.

### a.    Amazon Fails to Prove That the Actual Telebuyer Claim Limitations, Individually and as an Ordered Combination, Are Conventional

Amazon misapplies the second *Alice* step by failing to offer any evidence demonstrating conventionality and ignoring entirely all element combinations.

Having improperly parsed and rewritten the individual claims, Amazon then offers no ev-

idence that any of them was conventional at the time of the invention.  Instead, for factual support it relies entirely on court decisions, including *Ultramercial* and *buySafe*.  *See* Dkt. No. 202 at 14-15.  That reliance is misplaced.  First, *Ultramercial* and *buySafe* dealt with patents filed in 2000 and 2003, respectively.  *See* Exs. 18 and 19.  The conclusions that the claims in those cases recited computer elements that were conventional in the early 2000s have no bearing on whether a different group of claim elements were conventional a decade earlier, in 1993.  Moreover, those cases addressed the conventionality of certain basic claim elements not at issue here.  *See Ultramercial*, 687 F.3d at 716 (finding "Internet" conventional for patent filed in 2000); *buySafe, Inc. v. Google, Inc*., 765 F.3d 1350, 1355 (Fed. Cir. 2014) (finding "computers" conventional for patent filed in 2003).  This is not a case in which the only factual dispute is whether a computer or the Internet was conventional.  Amazon proves nothing by comparing a fictitious version of the claims here to another court's analysis of different claim elements in patents filed a decade later than Mr. Katz's inventions.  Amazon also cites the *Alice* Court's analysis of limitations such as "track multiple transactions," "adjust account balances," and "issue automated instructions … simultaneously," but fails to explain their relevance to this case—none of Telebuyer's claims recite similar limitations.  Dkt. No. 202 at 14.

Even more importantly, Amazon disregards the requirement that claim elements must be analyzed not just individually but as an "ordered combination." *Alice*, 134 S. Ct. at 2355.  Ignoring each claim as a whole, Amazon dissects the rewritten and truncated claim language into individual computer functions of "receiving," "storing," "obtain[ing]," "electronically transmitting," and "displaying" data to argue that these functions are "generic, well-understood, and routine." Dkt. No. 202 at 14.  This is improper.  The Supreme Court has long recognized the importance of analyzing process claims as a whole "because a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made." *Diamond v. Diehr*, 450 U.S. 175, 188 (1981).[13]  Thus,

---

[13] *Diehr* is controlling precedent and provided the foundation for the Supreme Court's decision in *Alice*. *See Alice*, 134 S. Ct. at 2354-55, 2358, 2360.



"[t]he 'novelty' of any element or steps in a process … is *of no relevance* in determining wheth-er the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." *Id*. at 188-89 (emphasis added).

Amazon fails to address any ordered combination recited by the asserted claims. For ex-ample, claim 1 of the '894 Patent recites, among other limitations, an ordered combination of receiving request data from a buyer indicating a maximum price offered for a product or service, storing a portion of that request data, using a portion of that request data to selectively obtain re-sponsive video from a video storage device, and then selectively displaying that responsive video to the buyer. Ex. 9 at 1. Similarly, claim 89 of the '364 Patent includes, among other limita-tions, an ordered combination of sending an offer message to a selected group of buyers based on past requests of at least one buyer stored in memory. *Id*. at 17. None of these claims recite basic computer processing operations in isolation. Thus, Amazon's misplaced arguments—against dissected, individual computer functions—cannot establish that any claim element combination was conventional.

If it were permissible, Amazon's approach of dissecting patent claims into disconnected steps would "make all inventions unpatentable because all inventions can be reduced to underly-ing principles of nature which, once known, make their implementation obvious." *Diehr*, 450 U.S. at 189 n.12. Indeed, Amazon's approach would render all computer-implemented processes categorically unpatentable. *See id.* It is, therefore, of no surprise that Amazon's flawed method-ology not only contradicts recent Federal Circuit authority, but also runs counter to its own ac-tions before the Patent Office. In *DDR*, the Federal Circuit affirmed the patentability of a claim reciting a "method of … serving web pages offering commercial opportunities" comprising steps of "recognizing," "retrieving," "generating," and "transmitting" certain data. *DDR*, 773 F.3d at 1255; Ex. 11, claim 1. Similarly, a patent issued to Amazon during this very litigation claims an auction process comprising steps of "transmitting," "receiving," "determining," and "authenticat-ing" data performed using generic computer components. *See* Ex. 20, claim 1; *see also* Ex. 21, claim 1 (similarly structured process claim issued to Amazon's CEO Jeff Bezos); Ex. 13 at 2,

YARMUTH WILSON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

claim 1 (similar process claim in Amazon's pending application).  Applying Amazon's method-ology, the *DDR* claim and Amazon's own claims would all be invalid because, like Telebuyer's, they can be rewritten, truncated, and reduced to a disconnected set of computer operations.

Amazon's failure to supply any evidence of conventionality or address any combination of elements preclude the grant of summary judgment.  *See Ameritox,* 2015 WL 728501 at *24 ("When, as here, [the movant] is asking the court to infer that the combination of elements is conventional, it must supply some evidence to convince the trier of fact to accept its version of events.").  Given the specific limitations and combinations recited by the asserted claims, and the substantial evidence demonstrating that the asserted claims were inventive over conventional e-commerce systems existing at the time of the invention (as discussed below), Amazon cannot plausibly argue that all limitations of all 32 asserted claims, both individually and in ordered combinations, were conventional and routine without providing ***any*** supporting evidence.  *Id.*

### b.   The Telebuyer Claims Recite Limitations That, Taken Individually or as an Ordered Combination, Are Inventive

Amazon's complete failure to submit evidence of conventionality is not surprising be-cause all the evidence before this Court demonstrates that Telebuyer's claims recite elements and combinations that were *un*conventional in 1993.  As reflected in Exhibits 9 and 10, each asserted claim embodies at least one of the following two exemplary inventive concepts: (1) a data-driven approach for identifying buyer interest that solves the "information overload" problem unique to e-commerce systems; and, (2) advanced video capabilities that allow buyers to view and com-pare products without having direct, face-to-face communications with vendors.  As in *DDR*, these inventive features, among many others, confine the claims to particular applications, negate any preemption concern, and ensure that they amount to "significantly more" than the patenting of an abstract idea.  *See DDR*, 773 F.3d at 1255.

***First***, the asserted claims provide a technological solution that "effectively prevents in-formation overload."  '894 Patent at 3:63-65.  Compared to brick-and-mortar stores, e-commerce systems can have inventories that are virtually infinite.  A single computer can store information

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   about thousands of vendors all offering the same type of product or service.  If a prospective

2   buyer were presented with all possible vendors for each product, she would be overwhelmed and

3   the overall system would struggle to match vendors and customers.  The conventional solution in

4   1993 was to import the department store or catalog approach into the computer world.  *See, e.g.,*

5   Ex. 4 at 8-9; Ex. 6 at 4-5; Ex. 22 at 107.

6        The asserted claims reject this conventional, menu-driven approach and instead provide a

7   technological solution that enables a "traffic control system" to identify a buyer's area of interest

8   based on data relating to that specific buyer, or data relating to buyers with similar interests.  *See,*

9   *e.g.*, '364 Patent, claims 47 and 89.  Unlike a brick-and-mortar retailer, a computer can store data

10  about each interaction with each prospective buyer and use that data to prioritize and identify the

11  most relevant vendors (or the most relevant buyers) in each situation.  For example, the asserted

12  claims recite steps of sending an offer message to a selected group of buyers based on past re-

13  quests of at least one buyer.  *See, e.g.,* '364 Patent, claim 89; '796 Patent, claim 46.  As dis-

14  cussed above, Amazon fails to provide any analysis of these claims and simply dismisses them

15  with the wave of its hand as adding "nothing relevant to this motion."  *See* Dkt. No. 202 at 8-9.

16       The patent specification describes an illustrative "shampoo" embodiment (described dur-

17  ing Telebuyer's technology tutorial): After a vendor uploads a video about shampoo products,

18  the control computer identifies and isolates a group of potential buyers who may be interested in

19  that video by using data stored about them, invites potential buyers to view the video, and stores

20  data about each buyer's access of the video for future transactions.  '894 Patent at 23:24-63.

21  This capability—which is reflected, for example, in claim 89 of the '364 Patent—embodies an

22  inventive concept that is distinctive over the conventional, menu-driven access offered by e-

23  commerce systems circa 1993.  *See, e.g.,* Exs. 4, 6, 22, and 23.  And this capability is also far

24  different from automating direct mail advertising; the invitation messages of claim 89 are sent

25  only to buyers isolated specifically for a particular offer, based on the buyers' interest at that

26  time, not to every possible buyer on a mailing list.  A Harvard paper on e-commerce showed that

27  by 1999—six years ***after*** Telebuyer's invention—only 5% of online apparel retailers offered rec-

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OF INVALIDITY  -  18
NO. 2:13-cv-01677-BJR

YARMUTH WILSON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

ommendations based on prior purchases. *See* Ex. 24 at 9. Amazon, which considers itself a leader in recommendation technology, did not file its own patent claiming "a recommendation process which generates personal recommendations" until five years after Telebuyer's invention. *See* Ex. 25, claim 1. This evidence establishes that Telebuyer's data-based approach for identifying buyer interest, and for isolating potential buyers and vendors, was unconventional in 1993.

In the same vein, several claims recite steps relating to storing buyer reactions to offers as another mechanism for prioritizing vendors and videos. *See, e.g.*, '894 Patent, claim 48; '364 Patent, claims 50, and 55. Other claims use stored data, such as "stored priority designations," to provide access to vendor videos based on a priority status. *See, e.g.*, '509 Patent, claims 36, 74, 85; '272 Patent, claim 47. Amazon fails to provide any substantive analysis of these claim elements. These prioritization and buyer feedback features did not become routine in online commerce systems until well after Telebuyer's inventions. Use of product reviews and the now ubiquitous "like" function to identify buyer interest, for instance, did not become conventional until the 2000s. *See* Ex. 26 at 4. And as Amazon's founder acknowledged in a 1996 interview, buyer reviews and other interactive features were "incredibly powerful" and enabled new computer functionality that "you can't reproduce … in the physical world." Ex. 27 at 87. Indeed, the data-driven approach embodied by Telebuyer's claims offers a technological solution to the "information overload" problem that arises only in e-commerce systems—and never in face-to-face commerce. Thus, the asserted claims are patent eligible because they recite elements "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR*, 773 F.3d at 1257.

***Second***, the asserted claims include advanced video elements that were neither conventional nor routine in 1993. For example, in combination with the data-driven identification of buyer interest discussed above, the asserted claims recite video search elements that allow the traffic control system to selectively obtain and deliver product videos that may be of interest to the buyer, based on stored request data from the buyer. *See, e.g.*, '894 Patent, claims 1, 34, 48, 185; '508 Patent, claim 85; '509 Patent, claims 35, 36, 53, 57, 74; '272 Patent, claims 31, 47;

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800 F 206.516.3888

'364 Patent, claims 47, 50, 52, 55, 89, 103; '796 Patent, claims 1, 24, 32, 41, 46, 70, 73.  The asserted claims also include limitations that allow buyers to not simply view images, but to manipulate and share video from a remote location.  *See, e.g.,* '894 Patent, claim 34; '508 Patent, claim 85; '509 Patent, claims 57, 74, and 88; '796 Patent, claim 73.  Furthermore, the asserted claims include elements providing dynamic video or high-resolution static images.  *See, e.g.,* '894 Patent, claim 185; '509 Patent, claims 57, 74; '796 Patent, claim 32.  These advanced video features solve a specific problem particular to e-commerce systems—the inability of buyers to directly view and compare products being offered for sale.  Amazon, by unilaterally selecting "representative claims" and then rewriting the claim limitations, fails to address any of these advanced video features.

In 1993, use of advanced video capabilities in electronic commerce systems was, at most, still in experimental stages.  Experimental television-based shopping systems—none of which had been widely adopted by 1993—displayed videos but had little, if any, interactive capabilities compared to those recited by the asserted claims.  *See* Exs. 5-6.  A 1994 article, produced by Amazon, establishes that CompuServe® had only just introduced the capability to provide high resolution graphics, and that only a few merchants were using this capability at that time:

> CompuServe announced with some fanfare the introduction of graphics in their shopping mall area.  ***The service claims to be the first online service to offer high resolution graphics*** as a complement to home shopping product descriptions ….  [W]e found a scant handful [of merchants who used this new feature], and some specific merchants such as Buick and Sears were announced but simply didn't have any images online.

Ex. 23 at 31 (emphasis added).  Thus, Amazon's own evidence demonstrates that use of "high resolution graphics" was unconventional and, at best, limited at the time of Mr. Katz's invention.

By 1993, both computer-based systems (*e.g.,* CompuServe® and Prodigy®) and television-based systems (*e.g.,* Telaction®) relied mainly on text-based hierarchical menus for navigation.  *See, e.g.,* Ex. 4 at 2-12; Ex. 6 at 4-11; Ex. 22 at 107.  In general, neither type of system provided a video search capability that stored request data from the buyer and selectively obtained videos based on that stored data so that the buyer could easily compare products.  *See id.*  Indeed, Telebuyer added several video search limitations during prosecution "to further clarify a

YARMUTH WILSON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   *basic distinction from the prior art* that the central control unit selects and transmits the video

2   based on the user's request data." Ex. 28 at 2 (emphasis added).  And none of the preexisting

3   systems allowed a buyer to share a video with other buyers from a remote location.  Even by

4   1999, six years *after* Mr. Katz's inventions, video manipulation was still not available in most e-

5   commerce systems.  *See* Ex. 24 at 9 (showing just 23% of online apparel retailers in 1999 pro-

6   vided zoom capability); *see also*, Exs. 4, 6, and 23.  Amazon fails even to address these advanced

7   video limitations in its motion.  The evidence in this case confirms that the advanced video ele-

8   ments recited by the asserted claims were far from routine and conventional in 1993.  At the very

9   least, there is a factual dispute as to the conventionality of these advanced video elements, pre-

10  cluding summary judgment.

11      In short, Amazon provides no evidence demonstrating the conventionality of any claim

12  element or combination, yet asks the Court to conclude that there is no factual dispute as to

13  whether they were routine in 1993.  The only evidence in the record leads to the opposite conclu-

14  sion.  Under a correct application of the *Alice* test, the Court should deny Amazon's motion.

## 5.   The "Machine-or-Transformation Test" Is Inapplicable

16      Unable to demonstrate patent ineligibility under *Alice*, Amazon resorts to the now disfa-

17  vored "machine-or-transformation test."  Dkt. No. 202 at 19.  This "test" was originally adopted

18  by the Federal Circuit for evaluating the patentability of *process claims* only.  *See Bilski*, 561

19  U.S. at 600 (explaining that "machine-or-transformation" was a "test for determining patent eli-

20  gibility of a process under § 101").  It was not designed for system claims, and Amazon does not

21  explain why it should be applied to the asserted system claims here.  *See* '508 Patent, claim 85;

22  '796 Patent, claims 1 and 46.  Nor does Amazon explain how Telebuyer's system claims—which

23  recite specific arrangements of computer hardware—fail to qualify as having a "machine."

24      Even as applied to the asserted process claims, Amazon's reliance on this "test" flies in

25  the face of criticism by the Supreme Court.  In *Bilski*, "machine-or-transformation" was rejected

26  as the exclusive test for patentability precisely because it had questionable applicability to the

27  type of claims at issue here.  *See id.* at 603.  In particular, the Supreme Court refused to impose a

YARMUTH WILSON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   requirement that a patentable "process" be tied to a particular machine or must transform an arti-

2   cle because such a requirement contradicts the express definition of "process" set forth in the Pa-

3   tent Act.  *Id.* at 603-04 (citing 35 U.S.C. § 100(b), which defines "process" as "process, art or

4   method, and includes a new use of a known process, machine, manufacture, composition of mat-

5   ter, or material").  The Court further noted that, while "machine-or-transformation" may provide

6   a useful clue in evaluating "processes similar to those in the Industrial Age" (*i.e.,* processes that

7   operate on physical objects), its application to "inventions in the Information Age" (*i.e.,* process-

8   es that operate on information) raises serious concerns.  *Id.* at 604-06.  There is no reasonable

9   dispute that Telebuyer's process claims are of the Information Age, thereby making any analysis

10  under the machine-or-transformation test of dubious value.  Indeed, the Federal Circuit affirmed

11  the patent eligibility of Information Age-type process claims in *DDR* without requiring a specific

12  machine or a showing of transformation.  *See DDR*, 773 F.3d at 1258-59.  Thus, Amazon's reli-

13  ance on this test is misplaced for the very reasons explained in *Bilski*.[14]

14                    **6.     The Absence of Programming or Algorithms Is Irrelevant**

15          Amazon's argument based on a so-called "algorithm requirement"—whether the patent

16  discloses specific programming or algorithm—seeks to make new law by arguing that a comput-

17  er-implemented invention is eligible for patent protection only when tied to a particular machine,

18  in the form of a specially-programmed computer.  This argument is wrong as a matter of law.

19          The "algorithm requirement" is a narrow rule that applies only to patent claims drafted in

20  "means plus function" form—*i.e.,* claims reciting a "means for" or "step for" performing com-

21  puter functions.  *See Noah Sys. v. Intuit Inc.*, 675 F.3d 1302, 1318 (Fed. Cir. 2012).  The applica-

22  bility of this rule to the asserted claims is one of the claim construction disputes in this case.[15]

23

---

24  [14] Even if one were to apply "machine or transformation" to the asserted process claims, they would satisfy the test
    because all asserted claims recite specific computer hardware (*e.g.,* "traffic control system") and operate to
25  transform data (*e.g.,* "selectively providing" video data to a buyer based on areas of interest, or providing for
    "manipulation … of the stored video data").  *See, e.g.,* '894 Patent, claims 1, 34 and 185.

26  [15] Amazon has conceded that the "control" terms of the asserted claims do not use "means-plus-function" formula-
    tion and are not governed by the means-plus-function framework, but Amazon nonetheless attemps to apply the re-
27  quirement of that framework to those claim terms.  *See* Dkt. No. 154 at 9-13.

---

**YARMUTH WILSDON** PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1  But even if such an "algorithm requirement" were to be applied, its satisfaction would be rele-

2  vant only to the question of claim definiteness under 35 U.S.C. § 112 and not subject-matter eli-

3  gibility under § 101.  *See id.*  For example, in *DDR*, the Federal Circuit found process claims to

4  be patent eligible without requiring any computer algorithm.[16]  *DDR*, 773 F.3d at 1248; Ex. 11.

5    In addition to its complete lack of legal foundation, Amazon's argument is also wrong on

6  the facts.  Amazon assembles an elaborate chart of the "34 different computing results" said to

7  be achieved by the Telebuyer invention (Dkt. No. 202 at 5-6), but this chart is assembled from

8  statements in the specification, not the language of the asserted claims.[17]  Consequently, Ama-

9  zon's chart includes operations that appear nowhere in the asserted claims and are irrelevant to

10  this motion: *e.g.*, "fetch phone numbers," "transfer calls," "issue ID cards and check digits," "In-

11  terface ARUs," "auto-dial," "reschedule," "calling vendors," and "record outbound calls."  *Id.*

12    **B.** **Amazon's Motion for Invalidity Based on "Functional Claiming" Should Be Denied as Long-Overruled by Statute**

13  

14    In its alternative motion based on "functional claiming," Amazon presents, yet again, the

15  same argument rejected by the Supreme Court: that a computer-implemented invention is

16  unpatentable unless it is tied to a particular machine.  *See Bilski*, 561 U.S. at 603-05.  Amazon

17  does not really seek a ruling grounded in 150-year-old precedent, but instead asks this Court to

18  make new law that contradicts the statutory framework erected more than six decades ago.  Am-

19  azon's argument is so lacking in legal support that it does not cite, either here or in its *Markman*

20  briefing, a single case decided since the passage of the 1952 Patent Act in which a court invali-

21  dated a patent under the so-called functional claiming "rule."  Although Telebuyer's *Markman*

---

22  [16] None of the cases cited by Amazon impose an "algorithm requirement" for patent eligibility.  Amazon cites
*DealerTrack* (Dkt. No. 202 at 17), where the patentee relied upon its recitation of "computer-aided" as the primary

23  basis for patent eligibility and the court found that this recitation—without anything more—was insufficient.  674
F.3d at 1333.  Telebuyer has never contended that its claims are patentable simply because they use a computer.
Rather, the ordered combinations of steps recited by Telebuyer's claims provide the foundation for patent eligibility.

24  [17] While the patents-in-suit describe a number of technologies, the 32 asserted claims—which were selected based
on the Court's order to limit claims (*see* Dkt. No. 174)—cover only a small portion of the disclosed technologies.

25  Many of these disclosed technologies are claimed by related patents not asserted in this case.  Because "claims are
the definition of what a patent is intended to cover," Amazon's arguments against technologies not covered by the

26  asserted claims are improper and irrelevant.  *Ultramercial*, 772 F.3d at 714; *see also, Phillips v. AWH Corp.*, 415
F.3d 1303, 1312 (Fed. Cir. 2005) ("It is a 'bedrock principle' of patent law that 'the claims of a patent define the

27  invention to which the patentee is entitled the right to exclude.'").

---



YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1  brief highlighted Amazon's lack of authority (Dkt. No. 161 at 3-4), Amazon fails to correct this

2  defect here.  The reason is clear—the only authority on which Amazon relies was overruled.

3        Even if Amazon's long-overruled precedent were still good law, Amazon's arguments are

4  rife with disputes over material facts that independently preclude summary judgment.  Amazon

5  argues that the elements of the asserted claims have no structural meaning.  *See* Dkt. No. 154 at

6  7-9.  But Telebuyer has submitted voluminous evidence—including patents, publications, refer-

7  ence texts, and even the deposition testimony of Amazon's own expert—confirming that the

8  claim terms in dispute were known and used by those skilled in the art at the time of the inven-

9  tion to refer to specific categories of structures.  *See* Dkt. No. 152 at 14-17; Dkt. No. 161 at 4-7.

10  Thus, Amazon cannot demonstrate the absence of a material issue of fact.

11        Material dispute or not, Amazon's motion would still fail.  Of the 32 asserted claims, 29

12  are process claims—*i.e.*, reciting steps to be performed.  Characterizing these steps as a "func-

13  tional" description of a structure, as Amazon does (Dkt. No. 154 at 7-9), mischaracterizes what a

14  process claim is under the law.  Process claims are not defined by a structure, but by the many

15  process steps they recite.  *See* Dkt. No. 161 at 4-5; 35 U.S.C. § 100(b).  As explained in *Bilski*,

16  process claims are patentable with or without any definition of structure.  561 U.S. at 603-04.

17  **IV.**   **CONCLUSION**

18        Amazon's "abstract idea" and "functional claiming" grounds for invalidity are premised

19  on the same flawed argument: computer-implemented inventions cannot be patentable unless

20  they include new computer hardware or new computer algorithms.  *See* Dkt. No. 202 at 1.  The

21  Supreme Court in *Bilski* and the Federal Circuit in *DDR* have already rejected what Amazon

22  proposes here—the elimination of computer-implemented processes as a category of patentable

23  inventions.  Amazon's attempt to evade that authority by ignoring most of Telebuyer's claims

24  and mischaracterizing the others should not be rewarded.  For the foregoing reasons, Telebuyer

25  respectfully requests that Amazon's motion for summary judgment be denied.

26

27

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

| | |
|---|---|
| 1 | DATED:  April 13, 2015 |

By: */s/ Brian M. Berliner*
Mark A. Samuels (*pro hac vice*)
Brian M. Berliner (*pro hac vice*)
Xin-Yi Zhou (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071
Telephone:     213.430.6000
Facsimile:      213.430.6407
Email:  msamuels@omm.com;
bberliner@omm.com; vzhou@omm.com

Marc J. Pensabene (*pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone:     212.326.2070
Facsimile:      212.326.2061
Email: mpensabene@omm.com

Susan van Keulen (*pro hac* vice)
Jonathan Crawford (*pro hac vice*)
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, CA 94025
Telephone:     650.473.2600
Facsimile:      650.473.2601
Email: jcrawford@omm.com;
svankeulen@omm.com

Jeremy E. Roller, WSBA No. 32021
Diana S. Breaux, WSBA No. 46112
YARMUTH WILSDON PLLC
818 Stewart Street, Suite 1400
Seattle, WA 98101
Telephone:     206.516.3800
Facsimile:      206.516.3888
Email: jroller@yarmuth.com;
dbreaux@yarmuth.com

*Attorneys for Plaintiff and Counterdefendant*
*Telebuyer, LLC*

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Brian D. Buckley
Ewa M. Davison
J. David Hadden
Saina S. Shamilov
**Fenwick & West LLP**
bbuckley@fenwick.com
edavison@fenwick.com
dhadden@fenwick.com
sshamilov@fenwick.com

Matthew J. Moore
S. Giriraj Pathmanaban
Douglas E. Lumish
Richard G. Frenkel
Gabriel S. Gross
Patricia Young
Eugene Chiu
Gregory G. Garre
Gabriel K. Bell
**Latham & Watkins LLP**
matthew.moore@lw.com
giri.pathmanaban@lw.com
doug.lumish@lw.com
rick.frenkel@lw.com
gabe.gross@lw.com
patricia.young@lw.com
eugene.chiu@lw.com
gregory.garre@lw.com
gabriel.bell@lw.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated:  April 13, 2015 at Seattle, Washington.

*s/Sue Stephens*
Sue Stephens, Legal Assistant

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OF INVALIDITY  -  26
NO. 2:13-cv-01677-BJR



YARMUTH WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888